(No. 6916.    June 2, 1941.)

T. J. LLOYD, on his own behalf and on behalf of all others similarly situated, Appellant, v. TWIN FALLS HOUSING AUTHORITY, Respondent.

[113 Pac. (2d) 1102.]

J. R. Bothwell and W. B. Bowler, for Appellant.

O. P. Duvall, for Respondent.

MORGAN, J.—This action was commenced by appellant to perpetually enjoin respondent from issuing, selling or otherwise disposing of bonds proposed to be issued by it. The following statement of the contents of the complaint is copied from appellant's brief:

"It is alleged by the complaint that plaintiff is a resident, property owner and taxpayer of the City of Twin Falls, which City is within the area of operation of the defend-

ant, Twin Falls Housing Authority (referred to as the Local Authority), and the action is brought on his own behalf and on behalf of all others similarly situated.

"That the defendant purports to be a public corporation created by the 'Housing Authorities Law,' which is Chapter 234, Session Laws of 1939, organized pursuant to Resolution No. 133, adopted and approved by the City Council and Mayor of Twin Falls, on June 5, 1939.

"That the defendant, Local Authority, has caused plans and specifications to be prepared and intends to develop in the City of Twin Falls a low rent and slum clearance housing project which will provide dwelling units; which Local Authority intends to rent to families who lack the amount of income which is necessary to enable them, without financial assistance, to live in decent, safe and sanitary dwellings without overcrowding. That to obtain suitable lands for a site upon which the project will be constructed, the Local Authority has purchased several tracts of land at an expenditure of approximately $15,-000.00 and intends to acquire other lands by purchase or by the exercise of 'eminent domain.' That the said Local Authority has estimated that it will cost approximately $369,000.00 to develop the project, and it proposes to issue and sell its housing bonds in an amount sufficient to pay for the cost of developing the project. That as a means of financing the development of the project and of financing the operation and maintenance thereof, the Local Authority entered into a contract on November 28, 1940, with the United States Housing Authority, an agency of the Federal Government (referred to as 'U.S. H.A.') whereby the said U.S.H.A. agreed to purchase bonds or other obligations of the Authority in an amount not to exceed ninety per centum of the total cost of development; said bonds to bear interest at the rate of two and one-half per centum per annum, and to mature in annual serial installments running over a period not to exceed sixty years from the date of the contract. The contract also provides that the U.S.H.A. will make available to the Local Authority annual contributions in an amount not exceeding three per centum of the total de-

velopment cost, said contributions to be paid for a period of sixty years.

"And that the annual contributions shall be pledged for the payment of all bonds and other obligations issued by the Local Authority. That the Local Authority has negotiated an advance loan note in the sum of $44,000.00 dated December 28, 1940, payable to the U.S.H.A., and is using the proceeds thereof for the acquisition of lands and the payment of other development costs of the project; and further that said Local Authority proposes to and will, unless restrained by the court, issue its bonds or other obligations in an amount equal to the total cost of construction of said project, and will cause said bonds or other obligations to mature annually over a period of sixty years, and will issue, sell and deliver said bonds or other obligations without first obtaining the approval of two-thirds of the voters residing within the territorial jurisdiction of said Local Authority as required by Article VIII, section 3, of the Constitution of Idaho.

"And further that said defendant, Local Authority, proposes to deliver to the U.S.H.A. bonds or other obligations which will mature annually over a period of sixty years in an amount not exceeding ninety per centum of the development cost of the said project, and intends to sell the remainder of said bonds or other obligations to persons other than the U.S.H.A., and proposes to secure the said bonds or other obligations by pledge of the revenues from rentals derived from the operation of the project after first deducting the reasonable operating expenses, and to further secure said bonds or other obligations by pledge of the annual contributions to be made by the U.S.H.A., pursuant to the contract referred to in the complaint.

"That said Local Authority is a municipal corporation, or a subdivision of the State, within the meaning of Article VIII, Section 3, of the Constitution, and any attempt by the Local Authority to incur debt or other liability for a period exceeding twenty years, and without consent of two-thirds of the voters, would be null and void, and would amount to an unlawful and unconstitutional expenditure of public funds. That unless defendant is permanently

enjoined by the court plaintiff and all other property owners and taxpayers similarly situated will sustain great and irreparable damage.

"Plaintiff prays that Chapter 234, Session Laws 1939, be declared unconstitutional, and that defendant be permanently enjoined from issuing, selling or otherwise disposing of the bonds and obligations described in the complaint, and for general relief."

Respondent filed a general and a special demurrer to the complaint and the general demurrer was sustained, making a ruling on the special demurrer unnecessary. A judgment of dismissal was entered from which plaintiff has appealed.

The only question presented by the appeal is as to whether Chapter 234, Session Laws of 1939, is void because of conflict with Article VIII, Section 3 of the Constitution of Idaho. Appellant says in his brief:

"Plaintiff's action is grounded on the proposition that the Act is unconstitutional, being contrary to the provisions of Article VIII, Section 3 of the State Constitution."

That section is as follows:

"Sec. 3. No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void. *Provided,* That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

Appellant insists the liability incurred, and proposed to be incurred, by the issuance of bonds by respondent, as

alleged in the complaint, violates Article VIII, Section 3 of the Constitution, in the following particulars:

"(a)    It exceeds in the year incurred, the income and revenue provided for in such year without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose.

"(b)    Provision was not made, nor is it proposed to be made before or at the time of incurring the indebtedness for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due.

"(c)    No provision has been made, and none is intended to be made, to constitute a sinking fund for the payment of the principal indebtedness within twenty years from the time of contracting the same."

The legislative act, pursuant to which respondent was organized, does not provide for electors or elections. It cannot make provision for the collection of an annual tax sufficient to pay the interest on its indebtedness as it falls due, for the law does not authorize or permit it to levy or collect a tax. It is not a county, city, town, township, board of education, or school district, or other subdivision of the state, within the meaning of Article VIII, Section 3 of the Constitution, and the prohibition expressed in that section does not apply to it.

Section 19 of the act is as follows:

"CONSTRUCTION OF POWERS CONFERRED. Nothing in this Act or any other law shall be construed as authorizing a housing authority to levy or collect taxes or assessments, to create any indebtedness payable out of taxes or assessments, or in any manner to pledge the credit of the city, the county, the State or any subdivision thereof; nor shall any provision of this Act or other law be construed as authorizing a housing authority to mortgage or otherwise encumber property of any kind, real, personal or mixed, or any interest therein, but this section shall not be construed as preventing the pledge of the revenues of a housing authority as authorized in this Act."

Liability on bonds issued by a housing authority is strictly limited. It is provided in section 13 of the act under consideration, as follows:

"In order to carry out the purposes of this Act, an authority may issue, upon proper resolution, bonds on which the principal and interest are payable: (a) exclusively from the income and revenue of a housing project financed with the proceeds of such bonds, or (b) exclusively from such income and revenues together with grants and contributions from the Federal Government or other source in aid of such project.

"Neither the commissioners of any authority nor any person executing the bonds shall be liable personally on the bonds by reason of the issuance thereof. The bonds and other obligations of an authority (and such bonds and obligations shall so state on their face) shall not be a debt of the city, the county, the State or any political subdivision thereof and neither the city, the county, the State nor any political subdivision thereof shall be liable thereon, nor in any event shall such bonds or obligations be payable out of any funds other than those of said authority."

In *State v. State Board of Education*, 56 Ida. 210, 215, 52 Pac. (2d) 141, 143, there was presented to the court the question of the validity of a legislative act authorizing a contract evidencing a thirty-year amortized loan of money by the United States to the State Board of Education and Board of Regents of the University of Idaho, to be used in building an infirmary for the university, and to be repaid from revenues arising from the operation of the infirmary and a dormitory, property of the university. A question as to whether the act providing for the loan violated Article VIII, Section 3 of the Constitution was presented. After quoting that section, the court pointed out that the State Board of Education and Board of Regents of the University of Idaho is the constitutional and statutory successor to the Territorial Board of Regents and that the framers of the constitution, who proposed Article VIII for adoption recognized, approved and confirmed the Territorial Board of Regents. After stating that had the framers of the constitution intended to place the limitations and restrictions on the Board of Regents that were placed on counties, cities, towns and other municipal corporations by Article VIII, Section 3, they would have so framed the section as to expressly do so, we said:

"There is another reason why it is evident to us that it was not intended for this section (3 of art. 8) to include the Regents of the University, and that is: The Regents have not and never had any taxing power; they could not levy or collect taxes of any kind and were not and are not representatives of any municipality, territory, subdivision or taxing unit of the state in any respect. They are merely the managers and corporate representative of an educational institution which is dependent wholly on state and federal appropriations and donations for its finances and operating expenses. The Regents so recognized by the Constitution as a corporate entity were acting and were intended to act as an instrumentality of the state for the purpose of advancing the education of the youth of the state."

That reasoning applies to this case. (See, also, *Rutherford v. City of Great Falls*, (Mont.) 86 Pac. (2d) 656; *Housing Authority v. Dockweiler*, (Cal.) 94 Pac. (2d) 794; *Humphrey v. City of Phoenix*, (Ariz.) 102 Pac. (2d) 82; *Hogue v. Housing Authority of North Little Rock*, (Ark.) 144 S. W. (2d) 49; *Dornan v. Philadelphia Housing Authority*, (Pa.) 200 Atl. 834; *State v. Housing Authority of New Orleans*, (La.) 182 So. 725; *Marvin v. Housing Authority of Jacksonville*, (Fla.) 183 So. 145; *In Re Brewster Street Housing Site*, (Mich.) 289 N. W. 493; *Krause v. Peoria Housing Authority*, (Ill.) 19 N. E. (2d) 193; *Edwards v. Housing Authority of City of Muncie*, (Ind.) 19 N. E. (2d) 741; *Wells v. Housing Authority*, (N. C.) 197 S. E. 693; *Williamson v. Housing Authority, etc. of Augusta*, (Ga.) 199 S. E. 43; *McNulty v. Owens*, (S. C.) 199 S. E. 425; *Chapman v. Huntington, W. Va., Housing Authority*, (W. Va.) 3 S. E. (2d) 502; *Mumpower v. Housing Authority of City of Bristol*, (Va.) 11 S. E. (2d) 732.

The judgment is affirmed.

Costs are awarded to respondent.

Budge, C. J., and Holden, J., concur.

Givens, J., concurs in the conclusion reached.

Ailshie, J., took no part in the decision of this case.