531 P.2d 588

**BOARD OF COUNTY COMMISSIONERS OF TWIN FALLS COUNTY, Idaho, et al., Plaintiff-Appellants,**

v.

**IDAHO HEALTH FACILITIES AUTHORITY, Defendant-Respondent.**

No. 11564.

Supreme Court of Idaho.

Dec. 31, 1974.

As Amended Jan. 14, 1975.

**500**

Eugene C. Thomas and John R. Rowe of Moffatt, Thomas, Barrett & Blanton, Dwight V. Board, Boise, Janice C. Griffith of Hawkins, Delafield & Wood, New York City, for plaintiff-appellants.

Edward L. Benoit of Benoit, Benoit & Alexander, Twin Falls, for defendant-respondent.

W. Anthony Park, Atty. Gen., James G. Reid, Sp. Atty. Gen., Boise, amicus curiae.

BAKES, Justice.

This action arises from the refusal of the defendant-respondent Idaho Health Facilities Authority, hereinafter referred to as the Authority, to honor agreements it had entered into with the governing bodies of three Idaho hospitals and with the Idaho First National Bank, plaintiff-appellants herein. The agreements with the hospitals provided for the Authority to issue bond anticipation notes to obtain financing for said hospitals, to be repaid by the hospitals pursuant to agreements entered into between them and the Authority. The Sacred Heart Community Hospital of Idaho Falls was to use the proceeds to refinance its existing outstanding debt. Twin Falls County, which owns and operates Magic Valley Memorial Hospital, was to use the proceeds to cover the cost of structural alterations and improvements to the existing facility. St. Benedict's Hospital in Jerome was to use the proceeds to cover the cost of architect's fees incurred in connection with reconstruction, remodeling and equipping the existing building. The Idaho First National

Bank, hereinafter referred to as the Bank, had agreed to purchase the bond anticipation notes from the Authority.

Before issuance and sale of the notes, the Authority was advised by its conunsel that there were a number of serious questions regarding the constitutionality of the action taken by the Authority. When the Authority refused to abide by the agreements on the advice of its counsel that the agreements were not binding because they violated constitutional provisions, the hospitals and the Bank brought this action for declaratory judgment to determine whether or not the Authority had exceeded constitutional limitations.

The trial court, rendering judgment on the pleadings and the exhibits attached to them, found that the Authority had acted in contravention of numerous provisions of the Constitution of the State of Idaho and the Constitution of the United States. Appeal is taken from these findings of unconstitutionality.

Eight specific assignments of error have been made by the hospitals and the Bank, the plaintiff-appellants to this action. We will examine these assignments of error individually. Implicit in our analysis of each will be the strong presumption of constitutionality to which every legislative enactment is entitled. Leonardson v. Moon, 92 Idaho 796, 451 P.2d 542 (1969).

I

The first assignment of error alleges that the trial court was incorrect in ruling that the action taken by the Authority for the purpose of financing construction, remodeling of health facilities and refinancing outstanding debt of participating health organizations was not a public purpose and therefore violated Article 3 of the Constitution of Idaho and the Fourteenth Amendment to the Constitution of the United States.

The Authority was acting under the terms of the Idaho Health Facilities Authority Act, I.C. § 39–1441 et seq. This Act was passed in 1972 by the legislature in an attempt to create a public entity that could make tax-exempt revenue bond financing available to public and private non-profit hospitals within the state. The appellant contends that this method was adopted in part to compensate for the loss of federal funds which previously had been available for hospital construction and remodeling under the Hill-Burton Act. This tax exempt financing was to be accomplished by the Authority entering into agreements with the governing body of the hospitals in which the Authority would obtain a pledge of revenues of the hospital and such other security as provided in the individual agreement with the hospitals in return for money to be advanced to the hospital by the Authority. The Authority would obtain the money it advanced to the hospitals by selling bond anticipation notes which would be repaid from gross receipts from the hospitals. Interest income paid from the bond anticipation notes to the holders, such as the Bank, is supposedly tax-exempt under both Idaho and federal law. Under the statutory scheme and the agreements, no state tax money would be given to the Authority to loan or give to participating hospitals.

I.C. § 39–1442 contains the declaration of necessity and purpose of the Act:

"39–1442. *Declaration of necessity and purpose.—Liberal construction.*—It is hereby determined and declared that for the benefit of the people of the state of Idaho and the improvement of their health, welfare and living conditions, *it is essential that the people of this state have adequate medical care and health facilities*; that it is essential that health institutions within the state be provided with appropriate additional means to assist in the development and maintenance of public health, health care, hospitals and related facilities; that *it is the purpose of this act to provide a measure of assistance and alternative methods to enable health institutions in the state to refund or refinance outstanding indebtedness* incurred for health facilities *and to provide additional facilities and struc-*

*tures which are sorely needed* to accomplish the purposes of this act, all to the public benefit and good as more fully provided herein; . . ." (Emphasis added).

That section further provides that to achieve this purpose the Authority is authorized to:

" . . . lend money to health institutions and . . . acquire, construct, reconstruct, repair, alter, improve, extend, own, lease and dispose of properties to the end that the authority may be able to promote the health and welfare of the people of this state . . . [but] it is not intended by this act that the authority shall itself be authorized to operate any such health facility."

■ The purposes of the Act were for the betterment of the public health of the residents of the state by making available the means to improve hospital facilities or to allow hospitals to reduce their current debt-related expenses and channel more of their resources into health-related expenditures. This legislative declaration of public purpose is entitled to the utmost consideration, but it is not binding and conclusive upon the question of public purpose. Village of Moyie Springs, Idaho v. Aurora Manufacturing Co., 82 Idaho 337, 353 P.2d 767 (1960).

■ Article 3 of the Constitution of Idaho does not specifically mention a requirement of a public purpose for legislation authorizing a state-created public entity to expend funds. However, in the case of Village of Moyie Springs, Idaho v. Aurora Manufacturing Co., *supra,* this Court declared that "municipal corporations . . . are limited to functions and purposes which are . . . public in character as distinguished from those which are private in character and engaged in for private profit" (at p. 346, 353 P.2d at p. 773). Although that case dealt with the rights and powers of a municipal government to create a tax exempt entity (a municipally owned industrial park), the Idaho Constitution has no provision explicitly

constraining municipal corporations to exercise their powers for a public purpose, nor does a like provision appear in the law regulating state created entities. If this rule is a restriction upon the cities' powers, it must be so because it is also a restriction upon the state's power, for the cities are not singled out for unique treatment in this regard by statute or constitutional provision. Therefore, this restriction must be inherent throughout state government and must be a fundamental limitation upon the power of state government under the Idaho Constitution, even though not expressly stated in it. Thus, no entity created by the state can engage in activities that do not have primarily a public, rather than a private purpose, nor can it finance or aid any such activity. Article 8, § 2, Idaho Constitution. Village of Moyie Springs, Idaho v. Aurora Manufacturing Co., *supra.*

■■ We conclude that the use of these funds to better the existing health facilities throughout the state, when operated by either public or private non-profit entities, is for a public purpose within the rule announced in the *Moyie Springs* case. No profit-making private person or corporation is deriving an economic advantage from health facilities authorized under the Act. The primary purpose of the monies expended under the Act is to improve the caliber of health care available to the public; any incidental benefits to profit-making enterprises, such as a bank or other financing institution which buys the notes issued by the Authority, will not invalidate the program. Only if private interests are primarily benefited must such programs with public goals be invalidated. Boise Redevelopment Agency v. Yick Kong Corp., 94 Idaho 876, 499 P.2d 575 (1972). The actions of the Authority in entering into the contracts involved did not violate Article 3 of the Constitution of Idaho under the *Moyie Springs* interpretation of that article.

■ The due process clause of the Fourteenth Amendment to the Constitution of the United States, in a long line of

cases beginning shortly after its adoption, has been interpreted to mean that "there can be no lawful tax which is not laid for a public purpose." Loan Association v. Topeka, 87 U.S. (20 Wall.) 655, at 664, 22 L.Ed. 455, at 461 (1874). The Authority has not run afoul of the strictures of that amendment, first, because the monies it expends are not tax monies, and secondly, because the monies it expends are for a public purpose.

We uphold the appellants' contention in their first assignment of error. The monies expended by and the programs administered by the Idaho Health Facilities Authority carry out a public purpose, and hence the Authority does not violate Article 3 of the Idaho Constitution or the Fourteenth Amendment of the Constitution of the United States.[1]

## II

■ The second assignment of error alleges that the trial court was incorrect in ruling that the issuance and sale of bonds and notes by the Authority constituted the giving, loaning or pledging of the faith and credit of the state, thereby creating a debt or liability of the state in violation of Article 8, §§ 1–4, of the Idaho Constitution.[2]

I.C. § 39–1451 governs the payment of the bonds issued by the Authority in return for the funds given it. It provides in part that:

"Bonds and notes issued by the authority shall not constitute or become an indebtedness, or a debt or liability of the state, the legislature thereof, or of any county, city, township, board of education or school district, or other subdivision of the state, or of any other political subdivision or body corporate and politic of or municipality within the state and neither [of the aforementioned political entities] shall be liable thereon nor shall such bonds or notes constitute the giving, pledging or loaning of the faith and credit of [any of the aforementioned political entities or their subdivisions] . . . ."

The section further provides that:

1. While not included in the agreement with the Sacred Heart Community Hospital, that hospital requested additional funds

"for the construction of a doctor's office building adjacent to the hospital. We feel that this is the most effective means for increasing the productivity of physicians and is essential if the number of physicians that we have can meet the increasing demand for health services. We estimate that a facility that would meet our needs, housing approximately 20 to 30 physicians, would cost about $1,500,000." (Tr. p. 16). Nothing in this opinion should be construed as attributing a primarily public purpose to that or similar undertakings.

2. Excluding provisions inapplicable to the case before us, Article 8 provides:

" § 1. Limitation on public indebtedness.— The legislature shall not in any manner create any debt or debts, liability or liabilities, which shall singly or in the aggregate . . . exceed in the aggregate the sum of two million dollars . . . [unless approved by the voters] . . . .

"§ 2. Loan of state's credit prohibited.— Holding stock in corporation prohibited.— . . . The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation; nor shall the state directly or indirectly, become a stockholder in any association or corporation . . . .

"§ 3. Limitations on county and municipal indebtedness.—No county, city, town, township, board of education or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year [unless approved by the voters in a bond election] . . . provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of this state.

"§ 4. County, etc., not to loan or give its credit.—No county, city, town, township, board of education, or school district, or other subdivision, shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in the aid of any individual, association or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state."

"All expenses incurred in carrying out this act shall be payable solely from funds provided under the authority of this act and no liability or obligation shall be incurred by the authority beyond the extent to which moneys shall have been provided under this act."

I.C. § 39–1453 then provides that the Authority may collect

". . . rates, rents, fees and charges for the use of and for the services furnished or to be furnished by each facility . . . ."

These are the only funds obligated by the Act to satisfy payments due on the bonds or notes issued by the Authority. Thus, neither the state of Idaho as such, nor any local governmental unit, nor any other state-created agency or subdivision, has been obligated to meet the obligations of the bonds and notes issued by the Authority. The question is whether the obligation of the Authority constitutes a debt of the state of Idaho or a loaning of the state's credit within the meaning of Article 8, §§ 3, and 4. These sections prohibit counties and other political subdivisions of the state from incurring certain indebtedness without voter approval or pledging the subdivision's credit. We have already considered this issue in the cases of Lloyd v. Twin Falls Housing Authority, 62 Idaho 592, 113 P.2d 1102 (1941), and Boise Redevelopment Agency v. Yick Kong Corp., 94 Idaho 876, 499 P.2d 575 (1972), in analogous situations and have concluded that the obligations of the kind involved in this case, where the public entity created has no power to tax or encumber the assets of the body creating it, are not violative of the constitutional restrictions of Article 8. Accordingly, we uphold the appellants' second assignment of error.

### III

The third assignment of error alleges that the trial court was incorrect in ruling that the exemption from taxation given by I.C. § 39–1452 to the Authority was in violation of Article 7, § 5, of the Idaho Constitution. Article 7, § 5, provides in part that "[a]ll taxes are to be uniform upon the same class of subjects . . . : provided, that the legislature may allow such exemptions from taxation . . . as shall seem necessary and just . . . ." The trial court ruled that these tax exemptions were not necessary and just and, hence, violated the Constitution.

■ The only case in which a property tax exemption granted by the legislature was found not to be necessary and just is Village of Moyie Springs, Idaho v. Aurora Manufacturing Co., *supra*. In that case a statute authorizing municipalities to issue tax-free revenue bonds, the proceeds from the sale of which would be used to acquire and construct industrial facilities for manufacturing concerns, was struck down as unconstitutional under Article 7, § 5. The reason was that:

"An exemption which arbitrarily prefers one private enterprise operating by means of facilities provided by a municipality, over another engaged, or desiring to engage, in the same business in the same locality, is neither necessary nor just." 82 Idaho at 349, 353 P.2d at 775.

All private non-profit health institutions and all publicly operated health institutions are eligible to participate in the programs of the Authority. I.C. § 39–1443(c). Thus, the Authority does not fall within the foregoing prohibition announced in the *Moyie Springs* case.

This does not mean, however, that the Authority cannot be in violation of Article 7, § 5, upon grounds other than those announced in *Moyie Springs*. There may be other grounds for invalidating a tax exemption. We must investigate the history of this provision to determine what power was intended to be given to the legislature to create tax exemptions.

At the time of the adoption of the Idaho Constitution, there were a number of tax exemptions listed on the territorial statute books. The journal of the debates in the Constitutional Convention requires 56

pages to record the arguments in favor of elevating to a constitutional status one or another of the exemptions from taxation then in existence or then proposed. Finally, as a compromise, the "necessary and just" provision was offered and agreed to as the constitutional standard for allowing the legislature to create exemptions from taxation. This was accepted by the delegates and became the language of the present provisions.[3]

If the delegates urging special tax exemptions of one kind or another were willing to accept the "necessary and just" language of the section as it was passed, it follows that they intended that this section allow to the legislature broad discretion to establish tax exemptions of the sort they were advocating. Indeed, in Achenbach v. Kincaid, 25 Idaho 768, 140 P. 529 (1914), it was said that "the constitutional convention intended that the Legislature should have the sole right to determine what property should be exempt from taxation." (At 780, 140 P. at 533). This language does not comport with our decision in *Moyie Springs,* but it does indicate that the legislature was intended to have very broad powers to grant tax exemptions, which should not be lightly overturned by this Court.

■ We hold this tax exemption to be valid. The exemption favors no private party at the expense of another. It increases the attractiveness of the Authority's bonds in the market place and reduces the interest expense in financing public and private non-profit health facilities. The public as a whole are the beneficiaries of the improved health care made possible by the sale of the bonds and the proceeds devoted to improving or building medical facilities. The exemption from taxation is both necessary and just and is upheld. *See also* Barker v. Wagner, 96 Idaho 214, 526 P.2d 174 (1974).

## IV

The fourth assignment of error urges that the creation of the Authority in I.C. § 39-1444 as "an independent public body politic and corporate" is not in contravention of Article 3, § 19, or Article 11, § 2, of the Constitution of Idaho. Article 3, § 19, provides that the "legislature shall not pass local or special laws . . . [c]reating any corporation. . . . " Article 11, § 2, provides that:

> "No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal, or reformatory corporations as are or may be, under the control of the state . . . ."

There have been two cases in which legislatively created entities have been struck down by this Court for a violation of Article 3, § 19. These are Jackson v. Gallet, 39 Idaho 382, 228 P. 1068 (1924), and the State Water Conservation Board v. Enking, 56 Idaho 722, 58 P.2d 779 (1936).

*Jackson* concerned a legislative attempt to establish a state bar. Two of the five justices joined in an opinion which found that the legislature had created a corporation in violation of Article 3, § 19, and that the act embraced more than one subject, in violation of Article 3, § 16. Justice Wm. E. Lee concurred in the result solely upon the ground that the title of the act creating the Idaho state bar did not mention the appropriation set out in the act, and thus the Court could not order Gallet, the state auditor, to certify the plaintiff's claim for payment for performance of his duties as director of the state bar. Two justices dissented. The plurality based its conclusion that the bar was a corporation upon the fact that it had been given corporate powers, among them being rights of perpetual succession, a corporate seal, the right to receive gifts and bequests to promote its purposes, powers to make rules and by-

---

3. *See* Idaho Constitutional Convention Proceedings and Debates, Vol. 2, pp. 1703–1769 (1889). The general discussion of particular exemptions urged to be constitutionalized occupies pages 1703–1759; only then is the "necessary" and "just" compromise suggested and quickly adopted.

laws concerning election and tenure of its officers, the right to make by-laws concerning the control and regulation of its business. The dissent observed that these powers were held by virtually every state board and commission established, but they were not corporations. Because of the lack of a majority on the issue, no definitive statement about what constitutes a prohibited corporation was given in this case.

The *Enking* case dealt with the creation of a state board which had power, among other things, to appropriate to itself the waters of the state not yet appropriated. The board had contended that it was an administrative arm of the state. If that were so, then the Court reasoned that the appropriation of water by it would be in violation of Article 15, § 3, of the Idaho Constitution. Having thus concluded that the board could not be a state agency, the Court held that the board was a corporation that had been created by special act in violation of Article 3, § 19, and Article 11, § 2. There was no reason or authority given for the Court's declaration of this dichotomy that all state-created entities were either unconstitutionally created corporations or agencies of the state. The Court listed the powers which it indicated made the board a corporation:

1. Power of perpetual succession.

2. Power to sue and be sued.

3. Power to purchase and take grants of real and personal property and dispose of the same in its corporate name.

4. To adopt and use a corporate seal of which the courts shall take judicial notice.

5. Adopt rules and regulations.

6. To issue and negotiate negotiable coupon bonds.

7. To exercise all the sovereign powers of eminent domain. 56 Idaho at 729, 58 P.2d at 781–782.

Yet, as pointed out in the dissenting opinion to Jackson v. Gallet, *supra,* this cataloguing of powers does not differ in sig-nificant respects from those given to a governmental agency. Indeed, the seventh power is much more indicative of a governmental agency than a corporation. Yet, the Court in *Enking* concluded that the board was a corporation because it could not be a state agency. Again, the case gave no definitive answer to the question of how a corporation differs from a state agency, and it based its ruling upon the assumption that every state-created entity was either an agency of the state or a corporation.

Wood v. Boise Junior College Dormitory Housing Commission, 81 Idaho 379, 342 P. 2d 700 (1959), dealt with another state-created entity. The commission was created by the legislature as an independent public body corporate and politic, but it would come into being only if the junior college board of trustees found a necessity for its existence. I.C. § 33–2118. The commission had the power to sue and be sued, to have a corporate seal, to have perpetual succession, to make, amend and repeal by-laws, rules and regulations, to acquire, lease, operate, construct, improve and alter dormitory housing, and to rent, manage and lease dormitory housing. I.C. § 33–2122. The commission issued revenue bonds to be paid from the income received from its housing. Suit was brought to contest the validity of bonds issued by the commission. The commission's right to issue the bonds was upheld, but the question of whether or not the state had created a corporation in violation of Article 3, § 19, was never discussed in the opinion. The cases of Lloyd v. Twin Falls Housing Authority, 62 Idaho 592, 113 P.2d 1102 (1941), and the Boise Redevelopment Agency v. Yick Kong Corp., 94 Idaho 876, 499 P.2d 575 (1972), dealt with very similar situations. The legislature had created bodies to provide low cost housing or to direct urban renewal which would only come into existence after a finding of their necessity by the local government involved. In neither of these cases was there any discussion of the bodies created by the legislature being corporations that the legisla-

ture was prohibited from establishing. In these three cases the legislature created public bodies that would become operative upon approval of another public body, but public bodies were nevertheless created and no constitutional challenge mounted against any of them under Article 3, § 19.

In State ex rel. Williams v. Musgrave, 84 Idaho 77, 370 P.2d 778 (1962), the question of the status of the state insurance fund was before this Court. The fund was established by the legislature in I.C. § 72–901 et seq. The fund, into which premiums were to be paid according to the Workmen's Compensation Law and the Occupational Disease Compensation Laws, was to be administered by a state insurance manager. The manager was to have full powers to administer the fund, including power to promulgate administrative regulations, to sue and be sued, to contract as necessary to administer the fund, to acquire property for office space as necessary, to employ assistants, to invest the surplus of the fund and to make inspections of facilities of participating employees. I.C. §§ 72–902—72–906, 72–912 and 72–928. The manager was to have no personal liability for acts done in his official capacity. I.C. § 72–907. The fund was held not to be a corporation within the meaning of Article 3, § 19, or Article 11, § 2. But neither was the fund a state agency in the sense that the constitutional restrictions upon the state government applied to it. Money in the fund was held not to be state money nor was it money in the state treasury, although it was deposited with the state treasurer. Thus, payments could be made from the fund to meet claims against the state without meeting the constitutional requirement of approval by the State Board of Examiners under Article 4, § 18, and could be drawn from the treasury without an appropriation as required under Article 3, § 13. In discussing the status of the fund, this Court said that "[a]lthough not a corporation, the fund has some of the characteristics of a private corporation and occupies a similar status." 84 Idaho at 88, 370 P.2d at 784. The dichotomy urged in *Enking* was

rejected in *Musgrave.* . Thus, under the doctrine of the *Musgrave* case there are state-created entities which are neither corporations nor state agencies subject to all the restrictions of the state constitution.

Unlike corporations described in Title 30 of the Idaho Code, the state insurance fund is not controlled by private parties with power to choose the person that will administer the entity, nor are there such private parties with power to change the purposes for which it exists, even from one closely related public purpose to another. The powers to sue and be sued, to have a seal, to have perpetual succession, to make administrative regulations, to acquire and obtain property and issue notes are shared by a wide variety of government agencies along with most corporations. Thus, the existence of these powers cannot be determinative of corporate status under the meaning of the constitutional provisions being discussed. The state insurance fund has no corporate seal, but having one would not have changed its status. The state insurance fund was not explicitly given a power of perpetual succession, but the program it administers depends upon perpetual administration by successive managers of an ongoing entity. The state insurance fund therefore met the requirements of being a corporation as set out in *Enking,* but it was held not to be a corporation. It would appear then that the main distinction between a prohibited corporation under Article 3, § 19, of the Idaho Constitution, and a permissible "independent public body politic and corporate" under the doctrine of the *Musgrave, Lloyd, Wood* and *Boise Redevelopment Agency* cases are (1) the absence of the private parties with the right to control the entity or to manage it, and (2) the inability of private parties to change the fundamental structure and public purpose of the entity as set out in the law creating it. These features set them apart from corporations within the meaning of Article 3, § 19, or Article 11, § 2.

The Idaho Health Facility Authority is a board appointed by the governor. It cannot choose its own governing

**508**

body. Because of the public control over the Authority, it differs from the state bar found to be unconstitutional in the Jackson case, *supra,* where the lawyers of the state were given the right to elect the governing board of the bar. The Authority is restricted to a narrow range of permissible public goals and a narrow means of achieving them. In this regard it differs from the State Water Conservation Board in the *Enking* case, the primary purpose of which the Court found to be the undermining of the right of private appropriation of water. Like the state insurance fund, the Authority is not a corporation within the meaning of Article 3, § 19, or Article 11, § 2, of the Idaho Constitution. Like the state insurance fund, it is a public body but it is not an agency of the state within the meaning of all of the prohibitions against state action within the Idaho Constitution. Neither Article 3, § 19, nor Article 11, § 2, was violated by its creation.

## V

■ The fifth assignment of error alleges that the trial judge was incorrect in ruling that legislative power had been delegated to the Authority in violation of Article 2, § 1, and Article 3, § 1, of the Constitution of Idaho. Article 2, § 1, provides that there are to be three separate branches of government in Idaho, and no person exercising power in one branch shall exercise powers in another. This section does not expressly prohibit a delegation of legislative power, but it has been interpreted to prevent it. *See* Suppiger v. Enking, 60 Idaho 292, 91 P.2d 362 (1939). Article 3, § 1, provides that "The legislative power of the state shall be vested in a senate and house of representatives." This has been interpreted to mean that:

"The legislative power of the state is by article 3 of the constitution vested in the Senate and House of Representatives, and it is a fundamental principle of representative government that, except as authorized by the organic law, the legislative department cannot delegate any of its powers to make laws to any other body or authority." State v. Purcell, 39

Idaho 642, at 649, 228 P. 796, at 797 (1924).

The Authority has not been given unlimited discretion and authority. Its powers, as given in I.C. § 39-1447, do not give it any lawmaking power, but merely the power to determine facts necessary to carry out its functions, to regulate itself in carrying out the duties given to it by law, and to enter into agreements authorized by law. In Boise Redevelopment Agency v. Yick Kong Corp., *supra,* it was said when the question of a legislative delegation of power to the agency was at issue, that:

"[The legislature] can empower an agency or an official to ascertain the existence of the facts or conditions upon which the law becomes operative . . . The legislature must itself fix the condition or event on which the statute is to operate, but it may confide to some suitable agency the fact-finding function as to whether the condition exists, or the power to determine, or the discretion to create, the stated event. The nature of the condition is, broadly, immaterial." 94 Idaho at 885, 499 P.2d at 584.

There has been no unbridled discretion given to the Authority. It can act only for a limited purpose in a limited manner after a finding that certain conditions exist. There has been no lawmaking authority delegated to it. Neither Article 2, § 1, nor Article 3, § 1, of the Constitution of Idaho has been violated.

## VI

The sixth and seventh assignments of error assert that the trial court was incorrect in ruling that the Authority, by contracting to provide financing to St. Benedict's Hospital, which was owned by the Idaho Corporation of Benedictine Sisters, a religious sect, violated Article 1, § 4, Article 21, § 19, and Article 9, § 5, of the Constitution of Idaho, and the First Amendment to the Constitution of the United States. These assignments of error relate to the general issue of whether or not the Authority's action constitutes an establishment of religion, whether persons are being required

to support a religious sect, and whether public moneys are being spent in aid of a church or religious society, all as prohibited by the above constitutional provisions.

■ The appropriation of public funds to public hospitals operated by religious sects does not violate the First Amendment to the Constitution of the United States, Bradfield v. Roberts, 175 U.S. 291, 20 S.Ct. 121, 44 L.Ed. 168 (1899). But this does not mean that such commitment of funds is not violative of the Idaho Constitution. The Idaho Constitution places a much greater restriction upon the power of state government to aid activities undertaken by religious sects than does the First Amendment to the Constitution of the United States. Epeldi v. Engelking, 94 Idaho 390, 488 P.2d 860 (1971).

■ Article 1, § 4, of the Idaho Constitution provides that, "No person shall be required to . . . support any . . . religious sect or denomination . . . ." Article 9, § 5, provides that, "Neither the legislature nor any . . . public corporation, shall ever make any appropriation, or pay from any public fund or moneys whatever, anything in aid of any church or sectarian or religious society, . . . ." The moneys which the Idaho Health Facilities Authority was to give to the hospitals involved comes from the sale of that Authority's bonds, and thus the moneys are "public" since their source is the proceeds of the sale of a bond of a "public body politic and corporate." State v. Musgrave, *supra*. Further, the refinancing of existing debt or the lending of money for reconstruction and equipping of a building consists of giving "aid" to the building's owner. Therefore, the agreements between the hospitals and the Authority support and commit public moneys to the hospitals, and if those hospitals are owned and/or operated by "any church or sectarian or religious society," the Constitution of the State of Idaho has been violated. Epeldi v. Engelking, *supra*.

We uphold the trial court's conclusion of law # 8 in its determination that the agreement between the Authority and St. Benedict's Hospital, which is owned by the Idaho Corporation of Benedictine Sisters, a religious sect, violates Article 9, § 5, of the Idaho Constitution. The trial court's findings and conclusions did not pass upon the validity of the agreements with the Sacred Heart Hospital of Idaho Falls, particularly as it relates to Article 9, § 5, of the Constitution, and accordingly we do not pass upon the constitutionality of those agreements under Article 9, § 5.

## VII

■ The final assignment of error alleges that the trial court was incorrect in ruling that the action of the Board of County Commissioners of Twin Falls County, by agreeing to amortize principal and interest payments on the notes and bonds issued to them by the Authority, constituted an indebtedness and liability of the county in violation of Article 8, § 3, of the Constitution of Idaho, or constituted a pledging of credit of the county in violation of Article 8, § 4, of the Constitution of Idaho. The relevant portions of the provisions in question are set out in fn. 2, *supra*.

According to the transcript the Authority and Twin Falls County entered into an agreement calling for the county to make six monthly payments, beginning on October 1, 1973, and ending on March 1, 1974, to repay a principal amount of $62,800 and 6% annual interest on that sum. The record does not disclose whether this agreement caused the county to incur indebtedness or liability exceeding the income and revenue of the county for the year in which the liability was incurred, or whether an election was held to secure voter approval for incurring the indebtedness, but we need not consider these questions if we determine that the liability incurred was to meet "the ordinary and necessary expenses authorized by the general laws of the state."

Counties are authorized by statute to own and operate public hospitals. I.C. § 31–3501(2). The statute does not require that hospitals be operated by the counties. This does not mean, however, that any expenditures for the benefit of the hospital cannot be ordinary and necessary expendi-

tures because the county is not required to operate a hospital. In City of Pocatello v. Peterson, 93 Idaho 774, 473 P.2d 644 (1970), it was held that the repair, maintenance and construction of an airport which the city was by law allowed, but not required, to operate was not an inherently ordinary and necessary expense, but in the individual case before the Court such expenses were held to be ordinary and necessary. We believe that in the case before us—the operation of a hospital by Twin Falls County—expenditures made for the purpose of improving the structure of the hospital so that it will comply with state safety standards is an ordinary and necessary expense. According to appellants, there were but 46 hospitals in the state of Idaho as of the fall of 1973. A majority of them were publicly owned and operated. Given the few number of hospitals in the state and the large area they must serve, it is apparent that the loss of a hospital anywhere in the state would be a severe blow to the public health in the area in which the hospital was lost and would place a large strain upon the nearby institutions that would be called to make up for the loss, if indeed there were such other institutions. Even the loss of a wing or a floor of a hospital would have a very disruptive effect upon the health of the public in the area served by the hospital. It is certainly an ordinary and necessary undertaking to keep existing hospitals operational and in good repair. If the county commissioners of Twin Falls County believe that it is necessary to make expenditures to remedy structural defects in Magic Valley Hospital, this is an ordinary and necessary expense upon the part of the county. City of Pocatello v. Peterson, *supra*. For that reason, there is no violation of Article 8, § 3, of the Idaho Constitution by the agreement between Twin Falls County and the Authority to provide funds for remedying the substandard structure of Magic Valley Hospital, even though revenues from the Magic Valley Hospital become liable for expenditures beyond the current year.

The final question presented is whether or not the agreement entered into between the county and the Authority constitutes a lending or pledging of credit by the county in violation of Article 8, § 4. It has been held that this section does not apply to agreements entered into between local governments and other public bodies. Boise Redevelopment Agency v. Yick Kong Corp., *supra*. Such public bodies are not associations, corporations or joint stock companies within the meaning of Article 8, § 4.

> "The purpose of [Article 8, § 4] is clear. Favored status should not be given any private enterprise or individual in the application of public funds. The proceedings and debates of the Idaho Constitutional Convention indicate a consistent . . . [fear] that private interests would gain advantages at the expense of the taxpayers . . . We are led to the firm conviction that only private interests were intended to fall within the strictures of those sections relating to 'association,' 'corporation' and 'joint stock company.'
>
> " . . . Plaintiff, being a public and not a private enterprise, does not fall within the strictures and prohibition of Article 8, Section 4 . . . . " Boise Redevelopment Agency v. Yick Kong Corp., *supra*, 94 Idaho, at 883–884, 499 P.2d at 583.

The county has not violated Article 8, § 4, by entering into the agreement with the Authority.

## CONCLUSION

The judgment of the district court is reversed in part and affirmed in part. No costs allowed.

SHEPARD, C. J., and DONALDSON and McQUADE, JJ., concur.

McFADDEN, J., dissents.

McFADDEN, Justice (dissenting).

I dissent from that portion of the majority opinion which holds that the action by the Board of County Commissioners of Twin Falls County, in "agreeing to amortize principal and interest payments on the

notes and bonds issued to them by the Authority" is not violative of the provisions of Idaho Const. Art. 8, § 3. The rationale of the majority opinion is simply that the expenditures for the purpose of improving the structure of the hospital so as to comply with state safety standards are an ordinary and necessary expense. It is with this conclusion that I disagree. The reasons for this conclusion have been previously discussed in my dissenting opinion in City of Pocatello v. Peterson, 93 Idaho 774, 473 P.2d 644 (1970), and need not be again expressed. See, Comment, "Expansion of the 'Ordinary and Necessary Expense' Exception to the Constitutional Limitation on Municipal Indebtedness", 8 Idaho Law Review (Spring 1972, No. 2), p. 397.

The majority opinion relies upon the cases of Lloyd v. Twin Falls Housing Authority, 62 Idaho 592, 113 P.2d 1102 (1941), and Boise Redevelopment Agency v. Yick Kong Corp., 94 Idaho 876, 499 P.2d 575 (1972), as the basis for holding that in this case the Authority is not in contravention of Article 8, §§ 1–4 of the Idaho Constitution. It is my conclusion that those two cases are distinguishable from this case.

In Lloyd v. Twin Falls Housing Authority, supra, the legislative act which created the Authority contemplated that the Housing Authority would finance proposed construction of low-cost housing to be rented to individuals, pursuant to a contract with the United States Housing Authority. Under this agreement the U.S.H.A. agreed to purchase bonds or other obligations of the Authority. The U.S.H.A. was obligated to reimburse the local Authority by annual contributions in an amount not to exceed 3% per annum for 60 years. That arrangement set forth in Lloyd v. Twin Falls Housing Authority is a far cry from the agreement contemplated in this present legislation and agreements. Here, the Authority will issue its bond anticipation notes and from the proceeds of those notes (assuming that bonds would later issue to redeem the bond anticipation notes) extend the funds to the borrowers from the Authority, i. e., Twin Falls County. The borrowers then in turn would be obligated to repay these notes to the Authority, which in turn would be obligated to repay the holder of the bond anticipation notes, or the bonds issued by the Authority. In other words, the role of the Authority is merely a vehicle through which the County can circumvent the necessity of seeking voter approval of the voters of that county in order to borrow funds for whatever purpose may be desired.

In the case of Boise Redevelopment Agency v. Yick Kong Corp., supra, this court again was dealing with a legislatively created agency, designed primarily to take advantage of the opportunity afforded by the Federal Government to obtain federal funds to improve what was found by the City Council to be a "deteriorated and deteriorating area" within the City of Boise. In Boise Redevelopment, the primary issue was whether that agency fell within the strictures and prohibitions of Idaho Const. Art. 8, § 4, and Art. 12, § 4, which prohibit the loaning or giving of credit by counties or municipalities, respectively.

It is my conclusion that neither Lloyd v. Twin Falls Housing Authority, supra, nor Boise Redevelopment Agency v. Yick Kong Corp., supra, are authoritative on the proposition propounded by the majority. The purpose of the legislation involved in the instant case, as declared by the majority opinion in part at least, was to compensate for the loss of federal funds previously available under the Hill-Burton Act. The purpose and effect of this legislation (unlike that before this court in *Lloyd* and *Yick Kong Corp.*, supra) is to circumvent the strictures of Idaho Const. Art. 8, § 3, by denying the eligible voters of the taxing units (i. e., the counties) the opportunity to approve or reject in advance the creation of indebtedness by the counties.

For the foregoing reasons, it is my conclusion that the judgment of the trial court should be affirmed.