919 P.2d 334

**Bradford M. DOOLITTLE, by and through his parents and next of friends, Michael DOOLITTLE and Jeanette Doolittle, Plaintiffs–Respondents–Cross Appellants,**

v.

**MERIDIAN JOINT SCHOOL DISTRICT NO. 2, ADA COUNTY, State of Idaho, Defendant–Appellant–Cross Respondent.**

No. 21985.

Supreme Court of Idaho,
Boise, March 1996 Term.

June 21, 1996.

Foley & Freeman, Meridian, for appellants. Howard R. Foley argued.

Mary J. Butler, Boise, for respondent.

McDEVITT, Chief Justice.

Respondent, Brad Doolittle (Brad) is a child with hearing impairments, who qualifies for services under the Individuals with Disabilities Education Act (I.D.E.A.) 20 U.S.C.A. §§ 1400–1420 (West 1990). The purpose of I.D.E.A. is to assure that all children with disabilities have available to them a "free appropriate public education which emphasizes special education and related services designed to meet their unique needs...." 20 U.S.C.A. § 1400(c) (West 1995). Brad, by and through his parents Michael and Jeanette Doolittle, claim that the Meridian Joint School District No. 2 (School District) failed to provide Brad with a "free appropriate public education" (F.A.P.E.) and seek reimbursement of costs incurred in providing an appropriate education for Brad at a parochial school. The School District claims that the Doolittles are not entitled to reimbursement because the School District complied with I.D.E.A. The School District also contends that it would be a violation of article IX, section 5 of the Idaho Constitution to provide Brad with a sign-language interpreter at a parochial school.

The district court concluded that the School District failed to provide Brad with a F.A.P.E. as required under I.D.E.A., that the Doolittles were entitled to reimbursement, except for transportation costs, and that the Idaho Constitution was not violated by the School District's provision of a sign-language interpreter for Brad at a parochial school. We affirm in part and reverse in part the district court's decision.

## I.

### FACTS AND PRIOR PROCEEDINGS

Brad was born on April 11, 1982. Brad lives with his parents, Michael and Jeanette Doolittle (the Doolittles), within the boundaries of the School District. In 1985, Brad was diagnosed with a severe hearing impairment. In 1986, the Doolittles transferred Brad from a private pre-school to a special education program conducted by the Idaho School for the Deaf and the Blind (I.S.D.B.). Brad continued in the I.S.D.B. program for the balance of the 1986–1987 school year.

On May 20, 1987, the I.S.D.B. conducted a Child Study Team (C.S.T.) meeting that created an "individualized educational program" (I.E.P.) for Brad. The May 20, 1987 I.E.P., summarized Brad's educational performance levels. Brad received low scores on auditory comprehension.

After Brad completed the I.S.D.B. pre-school program, the Doolittles sought to enroll Brad in the School District's kindergarten program at Silver Sage Elementary School (Silver Sage). The principal at Silver Sage informed the Doolittles that Silver Sage did not have a program for children with hearing impairments. The Silver Sage principal did not refer the Doolittles to another school. The Doolittles concluded it was their responsibility to find an appropriate kindergarten program for Brad.

Although the Doolittles were aware that Jefferson School in the Boise School District had a hearing impaired program, the Doolittles did not enroll Brad at Jefferson School. The Doolittles thought that Brad would not qualify to attend Jefferson School since they did not live in the Boise School District and the Doolittles did not have a referral to transfer Brad to Jefferson School. The Doolittles enrolled Brad in the kindergarten program at Sacred Heart Elementary School (Sacred Heart) for the 1987–1988 school year. Sacred Heart is a parochial school

located in Boise. While attending Sacred Heart Brad did not have an interpreter, but he did receive consulting services from the I.S.D.B. There was no I.E.P. for Brad's placement at Sacred Heart and the School District did not provide Brad any support services.

In the summer and fall of 1988, the Doolittles sought to arrange a C.S.T. meeting with the School District to analyze Brad's areas of deficiency so that an appropriate placement could be found for him. On September 13, 1988, the Doolittles wrote a letter to the School District expressing their disapproval with the inaction taken by the School District. The September 13, 1988 letter, referred to the case *Thornock v. Boise Indep. Sch. Dist. No. 1,* and stated that the School District was required to offer Brad a F.A.P.E., to hold a C.S.T. meeting, and to develop a sufficient I.E.P. for Brad. In response to the Doolittles' September 13, 1988 letter, Dick Leonard, the School District's Director of Special Services, wrote the Doolittles, stating that he was not aware that things were not progressing smoothly. Leonard referred the Doolittles to Mike Anderson, who was the Supervisor of Special Education for the Boise School District and a consultant for speech and hearing impaired students at Jefferson School.[1] Mrs. Doolittle met with Anderson and provided him with a copy of Brad's audiograms and his 1988 speech and language evaluation. Anderson stated that if Brad did not need the facilities of a deaf classroom, the Boise School District could not help Brad. Anderson also noted that if Brad attended Jefferson School he would be in a deaf classroom for at least 30 days prior to any attempt at mainstreaming, despite the fact that Brad spent the entire previous year in a mainstream environment.

Anderson referred the Doolittles back to Leonard.

Without guidance from the School District, it was the Doolittles' responsibility to find an appropriate educational program for Brad. The Doolittles enrolled Brad in the first grade parochial program at St. Joseph's School for the 1988–1989 school year.

On February 17, 1989, the School District developed an I.E.P. for Brad. The February 17, 1989 I.E.P., indicated that Brad was hearing impaired and that he was functioning near his grade level, to somewhat below his grade level. For long-term goals and short-term objectives, the February 17, 1989 I.E.P., provided for consulting services, speech therapy and interpreter/aide services to bring Brad up to grade level.[2] Under the February 17, 1989 I.E.P., the I.S.D.B. was to continue providing consulting services for Brad. Only Brad's academic classes were interpreted.

An I.E.P. that was developed November 26, 1990, but not signed by the C.S.T. until April 22, 1991, was not used for the 1990–1991 school year. The April 22, 1991 I.E.P., was used for the 1991–1992 school year. The April 22, 1991 I.E.P., provided that the speech therapy and interpreter/aide services would continue to be provided, that Brad would be mainstreamed (participate in regular education) on a full time basis, and that special reading materials or adaptations would be discontinued. The April 22, 1991 I.E.P., provided for a qualified full time sign language interpreter to continue to be provided in the classroom and at all school activities during school hours. The services for Brad's hearing impairment were to be offered through the Gooding School Satellite Program and annual audiological services were to be provided and paid for by the

1. Leonard referred the Doolittles to Anderson because typically students who were involved in the I.S.D.B. program would enter Jefferson School. Leonard testified that he contacted Anderson who stated that Brad did not qualify for the Jefferson School. Katherine Sutton, who was the Supervisor of Special Education for the School District, testified that there was no disagreement that Brad was not an eligible candidate for the self-contained program at Jefferson School.

2. From 1989 through 1991, interpreter services were provided and paid for by the School District out of School District funds or by the State. The School District would enter into a contract with the interpreter and the interpreter would bill the School District for services provided. The payments would go directly to the interpreter and would not go to the parochial school. The Doolittles paid for all tuition at both Sacred Heart and St. Joseph's School, in addition to transportation costs and all audiological services.

School District. The April 22, 1991 I.E.P., set forth a full overview of the 3rd and 4th grade curriculum and set goals and objectives for Brad, i.e., that Brad would continue to proceed at an average pace and would finish the school year with the information provided in the curriculum overviews. The Doolittles did not object to the provisions of the April 22, 1991 I.E.P.

On October 2, 1991, and April 9, 1992, the Doolittles were notified that the School District would not continue paying for a sign language interpreter at a parochial school. Consequently, Mrs. Doolittle began visiting schools in the School District where Brad could potentially be placed. Mrs. Doolittle concluded that none of the schools she visited had an appropriate educational program for Brad.

In March 1992, the Doolittles informed the School District they had visited numerous schools in the School District and that they would need an appropriate educational program established before they could determine which school would be the best placement move for Brad. The Doolittles invoked the "stay put" rule under I.D.E.A., 20 U.S.C.A. § 1415(e)(3)(A) (West 1995), under which Brad could remain in his current placement at St. Joseph's School until a due process hearing was held.

The School District completed an I.E.P. for Brad on August 19, 1992, for the 1992–1993 school year. The August 19, 1992 I.E.P., stated that Brad would participate full-time in regular education with speech consultation and interpreter services as needed. The August 19, 1992 I.E.P., listed transportation, speech/language, and an interpreter, as related services the School District would provide.

The Doolittles objected to the August 19, 1992 I.E.P., based upon the lack of goals, objectives, and information regarding how Brad would be incorporated into a classroom setting. The Doolittles were concerned about how Brad would communicate with peers, how teachers would be in-serviced, and what the curriculum would be relative to St. Joseph's School curriculum.

On August 21, 1992, the School District requested an administrative due process hearing. The Doolittles and the School District subsequently attempted to reach an agreement through mediation.

After the attempt at mediation was unsuccessful, a due process hearing was held on January 20, 1993. On February 12, 1993, a decision was rendered in favor of the School District. The Hearing Officer determined that payment for interpreter services provided in a parochial school violated the Idaho Constitution. The Hearing Officer concluded that Idaho public funds can only be used in a parochial setting if it can be shown that there was no appropriate educational opportunity being offered. The Hearing Officer further held that the School District should have created a placement plan for Brad for the 1992–1993 school year, but the failure to create such a plan did not establish that a F.A.P.E. was not available. The Hearing Officer concluded that the School District had not been given the opportunity to provide a F.A.P.E. based upon the Doolittles failure to cooperate in placing Brad within the School District. The Hearing Officer noted that it was the responsibility of the Doolittles to designate a school for Brad. The Hearing Officer ordered the School District to cease paying for interpreter services in a parochial setting.

On March 16, 1993, Brad, by and through his parents, filed a complaint in district court seeking review of the administrative decision under I.D.E.A. Brad alleged that the Hearing Officer's decision denied Brad his right to a F.A.P.E. and his right to receive related services necessary for him to benefit from his special education.

The district court determined that the School District did not comply with the procedural requirements of I.D.E.A. and that the Doolittles' decision to place Brad at St. Joseph's School was appropriate. Pursuant to I.D.E.A., the district court determined that Brad could not be removed from St. Joseph's School until the procedural requirements of I.D.E.A. were met. The district court concluded that the Doolittles were entitled to reimbursement for the cost of providing Brad an appropriate education-

al program. Costs, attorney fees, and pre-judgment interest were also awarded to the Doolittles.

The School District filed a Motion to Alter or Amend the Judgment. The district court subsequently reversed its decision to award reimbursement for expenses incurred for transportation to the parochial school. An amended judgment was filed May 24, 1995. The School District appealed to this Court. The Doolittles cross appealed.

## II.

## STANDARD OF REVIEW

When reviewing a district court decision interpreting and implementing I.D.E.A., this Court will uphold the district court's findings of fact unless the findings of fact are clearly erroneous. *Thornock v. Boise Indep. Sch. Dist. No. 1*, 115 Idaho 466, 470, 767 P.2d 1241, 1245 (1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2069, 104 L.Ed.2d 634 (1989). A finding of fact is deemed to be clearly erroneous when this Court is left with the .definite and firm belief that a mistake has been made. *Id.* Conclusions of law are subject to a *de novo* review by this Court. *Id.* Mixed questions of fact and law are primarily questions of law which are reviewed *de novo. Id.*

## III.

## THE SCHOOL DISTRICT FAILED TO PROVIDE A F.A.P.E. FOR BRAD

The purpose of I.D.E.A. is to assure that all children with disabilities have available to them a free appropriate public education. 20 U.S.C.A. § 1400(c) (West 1995). A "free appropriate public education" comprises a special education and related services that: (1) have been provided at public expense and direction; (2) meet the standards of the State educational agency; (3) include an appropriate preschool, elementary, or secondary school education in the State involved; and (4) conform with a child's I.E.P. required under I.D.E.A. 20 U.S.C.A. § 1401(a)(18) (West 1990). An I.E.P. is a statement written by a C.S.T., which is composed of a qualified representative of the local education agency, the child's teacher, the child's parents, and whenever appropriate, the child. 20 U.S.C.A. § 1401(a)(20) (West 1995). An I.E.P. must include:

(A) a statement of the present levels of educational performance of such child,

(B) a statement of annual goals, including short-term instructional objectives,

(C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs,

(D) a statement of the needed transition services for students beginning no later than age 16 and annually thereafter ...

(E) the projected date for initiation and anticipated duration of such services, and

(F) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C.A. § 1401(a)(20) (West 1995). In exchange for financial resources from the federal government, the School District is required to establish policies and procedures assuring all disabled children receive a F.A.P.E. 20 U.S.C.A. § 1412 (West 1995). The School District "has an affirmative obligation to offer a [F.A.P.E.]." *Thornock,* 115 Idaho at 476, 767 P.2d at 1251. The School District cannot shift this burden upon the parents of a disabled child. *Id.*

In the present case, it is undisputed that Brad is a disabled child who is eligible for services under I.D.E.A. The School District knew of Brad's disability and had ample opportunity to evaluate and develop a F.A.P.E. for Brad and failed to do so. Mrs. Doolittle testified that Leonard was present at the I.S.D.B. May 20, 1987 meeting, when an I.E.P. was initially developed for Brad. The May 20, 1987 I.E.P., found that Brad was below grade level in auditory comprehension.

Once Brad completed the I.S.D.B. preschool program, the Doolittles sought to enroll Brad in the School District's kindergarten program at Silver Sage, which was the local school for the Doolittles. The Doolittles met with the principal of Silver Sage and

were informed that Silver Sage did not have a program for children with hearing impairments. The principal of Silver Sage mentioned that there were some hearing impaired children at Jefferson School in the Boise School District. The Doolittles did not receive a referral or other assistance from the School District in finding an appropriate kindergarten program for Brad.

The Doolittles enrolled Brad in the parochial kindergarten program at Sacred Heart for the 1987–1988 school year. While at Sacred Heart, Brad received consulting services from the I.S.D.B., but did not have an interpreter. There was no I.E.P. for Brad's placement at Sacred Heart and the School District did not provide Brad any support services.

Prior to the following school year, 1988–1989, the Doolittles again received no assistance from the School District in creating an I.E.P. for Brad. The Doolittles enrolled Brad in the parochial first grade program at St. Joseph's School. The Doolittles demanded the School District provide Brad a F.A.P.E. in a letter to the School District dated September 13, 1988.

On February 17, 1989, the School District developed an I.E.P. for Brad. The February 17, 1989 I.E.P., stated that Brad would be provided consulting services and a daily interpreter in order to bring Brad up to his grade level.

On November 26, 1990, the School District developed another I.E.P. for Brad. The November 26, 1990 I.E.P., was not signed by the parties until April 22, 1991. The April 22, 1991 I.E.P., was not used for the 1990–1991 school year, but was used for the 1991–1992 school year. The April 22, 1991 I.E.P., continued the School District's practice of providing Brad a qualified full time sign language interpreter in the classroom and at all school activities during school hours.

On October 2, 1991, the Doolittles were notified that the School District would no longer pay for a sign language interpreter at a parochial school. The School District, however, conditioned the creation of a replacement appropriate education program for Brad, upon the Doolittles first selecting a public school for Brad. After visiting a number of schools, the Doolittles contended that the School District must first establish an appropriate education program for Brad, before the Doolittles could determine which school would be best for Brad. The School District responded that it would not develop an appropriate educational program for Brad until the Doolittles selected a public school for Brad. In a letter dated August 17, 1992, the Doolittles refused to remove Brad from St. Joseph's School until the School District provided Brad an appropriate educational program.

On August 19, 1992, the School District completed an I.E.P. for Brad for the 1992–1993 school year. The August 19, 1992 I.E.P., lacked goals and objectives and lacked information regarding how Brad would be incorporated into a classroom setting.

█ Under I.D.E.A., parents of a disabled child may receive reimbursement for expenditures made for the private education of a child, if a Court determines (1) that the public placement violated I.D.E.A., and (2) that the private school placement was proper under I.D.E.A. *Florence County Sch. Dist. No. 4 v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993). Once a Court determines that the School District violated I.D.E.A., it is authorized to "grant such relief as the court determines is appropriate." *Id.* (quoting 20 U.S.C. § 1415(e)(2)).

█ The School District failed to provide Brad with a F.A.P.E. There was no hearing impaired program in the School District, no I.E.P. had been prepared for Brad to enter into a School District educational program, and no assistance or referral was given to the Doolittles to find an appropriate educational program for Brad. The Doolittles found an appropriate educational program for Brad at Sacred Heart and subsequently at St. Joseph's School.

█ Once Brad was enrolled in a parochial school, the School District was obligated to develop and implement an I.E.P. for Brad. *Thornock,* 115 Idaho at 475, 767 P.2d at 1250. The School District failed to annually update Brad's I.E.P. and failed to provide Brad a F.A.P.E. outside the parochial setting. The

placement of Brad at Sacred Heart and St. Joseph's School was proper. At each of the parochial schools Brad attended, Brad received consulting services and at St. Joseph's School Brad had an interpreter. There is no evidence indicating the parochial schools Brad attended did not offer an appropriate educational program. Contrary to the School District's contention, the Doolittles' are entitled to reimbursement for providing Brad an appropriate educational program at Sacred Heart and St. Joseph's School. *Florence County Sch. Dist. No. 4,* 510 U.S. at 15, 114 S.Ct. at 366; *Burlington Sch. Comm. v. Massachusetts Dep't of Educ.,* 471 U.S. 364, 369–70, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985). The Doolittles are entitled to reimbursement under I.D.E.A. for Brad's schooling from 1987 through 1991.

## IV.

### THE IDAHO CONSTITUTION IS PREEMPTED BY I.D.E.A.

■ The School District argues that article IX, section 5 of the Idaho Constitution prohibits the School District from paying for Brad's education at a parochial school. Where there is a conflict between a federal law and our state constitution, federal statutes that are made "in pursuance" of the United States Constitution will prevail over our state constitution. U.S. Const. art. VI, cl. 2; *State ex rel. Andrus v. Click,* 97 Idaho 791, 796, 554 P.2d 969, 974 (1976).

■ I.D.E.A. was enacted for the purpose of providing programs to meet the educational needs of children with disabilities "in order to assure equal protection of the law." 20 U.S.C.A. § 1400(b)(9) (West 1995); *see Board of Educ. v. Rowley,* 458 U.S. 176, 198–200, 102 S.Ct. 3034, 3046–48, 73 L.Ed.2d 690 (1982) (noting that Congress's intent in enacting I.D.E.A. was to assist States in meeting equal protection responsibilities). I.D.E.A. mandates a local school district pay for an appropriate educational program for a disabled child, regardless of whether the educational program is being provided by a parochial school. *Florence,* 510 U.S. at 15, 114 S.Ct. at 366.

■ The Idaho Constitution has been held to provide greater restrictions on the state's involvement in parochial activities than the Establishment Clause of the First Amendment. *Board of County Comm'rs v. Idaho Health Facilities Auth.,* 96 Idaho 498, 509, 531 P.2d 588, 599 (1974); *Epeldi v. Engelking,* 94 Idaho 390, 395, 488 P.2d 860, 865 (1971) *cert denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Article IX, section 5 of the Idaho Constitution prohibits appropriation or payment of public funds for any purpose which aids or helps support a school controlled by a church or sectarian society. Article IX, section 5 of the Idaho Constitution has been held to prohibit the use of public funds to provide for transportation of parochial students to their school, *Epeldi,* 94 Idaho at 398, 488 P.2d at 868, and to prohibit the expenditure of state funds to provide financing to a hospital owned by a religious sect, *Idaho Health Facilities Auth.,* 96 Idaho at 509, 531 P.2d at 599. The payment of public funds for an interpreter and Brad's tuition to a parochial school directly aides and supports a parochial school. Such payment of public funds is prohibited by article IX, section 5 of the Idaho Constitution.

■ Article IX, section 5 of the Idaho Constitution is in direct conflict with the reimbursement provisions of I.D.E.A. I.D.E.A. was enacted "in pursuance" of the United States Constitution. The School District accepted federal monies provided pursuant to I.D.E.A. I.D.E.A. preempts the Idaho Constitution. *See Zimmerman v. Volkswagen of Am., Inc.,* 96.11 ISCR 446, 447 (1996).

## V.

### THE DOOLITTLES ARE NOT ENTITLED TO REIMBURSEMENT FOR TRANSPORTATION COSTS

■ Based upon the district court's finding that the School District violated I.D.E.A., the district court was authorized to grant such relief as the court determined was appropriate. 20 U.S.C.A. § 1415(e)(2) (West 1990). The award of relief under I.D.E.A. is within the broad discretion of the district

court. *Florence County,* 510 U.S. at 15, 114 S.Ct. at 366. When fashioning the appropriate relief under I.D.E.A., a court may take into account equitable considerations, but must consider all relevant factors, including "the appropriate and reasonable level of reimbursement that should be required." *Id.* The district court's award of total reimbursement is not considered appropriate if it is determined that the cost of the private education was unreasonable. *Id.*

The district court awarded the Doolittles reimbursement for the tuition of the parochial schools Brad attended, but did not award Brad's transportation costs. The School District does not dispute that the amount of Brad's tuition at Sacred Heart and St. Joseph was reasonable.

▮ The district court properly concluded that the Doolittles are not entitled to reimbursement for transportation costs. When a child is disabled within the terms of I.D.E.A., the child is entitled to receive at public expense a specially designed education and related services, including transportation. 20 U.S.C.A. §§ 1400(c) (West 1995), 1401(a)(16) and (17) (West 1995), 1401(a)(18) (West 1990). In the present case, however, insufficient evidence was presented to award transportation costs to the Doolittles. Mrs. Doolittle testified that she drove 22 miles each day to transport Brad to and from St. Joseph's school. Doug Rutan, the Director of Special Services of the School District, after Leonard retired, testified that in 1993, the amount of reimbursement the School District provided for transportation costs was $.26 per mile. No evidence was presented as to the amount of reimbursement allowed by the School District for transportation costs from 1987 through 1992. We affirm the district court's denial of transportation costs.

judgment interest may be awarded where the amount of liability is liquidated or capable of ascertainment by a mere mathematical calculation in order to fully compensate the injured party. *Stoor's Inc. v. Department of Parks & Recreation,* 119 Idaho 83, 86, 803 P.2d 989, 992 (1990). Prejudgment interest is not compounded. *Osborn v. Ahrens,* 116 Idaho 14, 16, 773 P.2d 282, 284 (1989).

The district court properly awarded prejudgment interest to the Doolittles. The district court, however, improperly calculated the prejudgment interest by compounding interest. We reverse the district court's calculation of prejudgment interest and remand with instructions to recalculate prejudgment interest to reflect simple interest.

▮ The School District argues that the Doolittles should not be reimbursed for amounts paid by the Doolittles' insurance company. The School District failed to raise as an issue before the district court whether the Doolittles are entitled to be reimbursed for funds paid by the Doolittles' insurance company. This Court will not consider issues presented for the first time on appeal. *Viveros v. State Dep't of Health & Welfare,* 126 Idaho 714, 716, 889 P.2d 1104, 1106 (1995).

▮ The Doolittles seek attorney fees on appeal. I.D.E.A. provides that reasonable attorney fees may be awarded in any action or proceeding brought under I.D.E.A. as part of the costs to the parents of a disabled child, when such party is the prevailing party. We hold that the Doolittles are the prevailing party in this case, both on appeal and below, and thus the Doolittles are entitled to an award of attorney fees pursuant to I.D.E.A. 20 U.S.C.A. § 1415(e)(4)(B) (West 1995); I.R.C.P. 54(e)(1).

## VI.

### THE DOOLITTLES ARE ENTITLED TO PREJUDGMENT INTEREST AND ATTORNEY FEES.

▮ Section 28–22–104 of the Idaho Code provides for the award of prejudgment interest on "[m]oney after the same becomes due." I.C. § 28–22–104(2) (Supp.1995). Pre-

## VII.

### CONCLUSION

The School District failed to provide Brad a F.A.P.E., contrary to the provisions of I.D.E.A. We affirm the decision of the district court awarding the Doolittles reimbursement for providing Brad an appropriate educational program. The Doolittles are

entitled to attorney fees, costs, and prejudgment interest calculated based on simple interest. The district court's denial of transportation costs is affirmed.

JOHNSON, TROUT and SCHROEDER, JJ., and WOOD, J. Pro Tem., concur.