65 P.3d 509

**IRON EAGLE DEVELOPMENT, LLC., an Idaho Limited Liability Company; and Heartland, LLC., an Idaho Limited Liability Company, Plaintiffs–Appellants,**

v.

**QUALITY DESIGN SYSTEMS, INC., a/k/a Blackburn Holding Company; Quality Design Systems, Inc., an Iowa corporation, Defendants–Respondents,**

and

**John Doe Legal Entities I through V; and John Doe Individuals I through V, Defendants.**

No. 27755.

Supreme Court of Idaho, Boise, December 2002 Term.

Feb. 27, 2003.

488

Thomas G. Maile IV, Eagle, for appellants.

Eberle, Berlin, Kading, Turnbow & McKlveen Chtd., Boise, for respondents. Michael J. McDonagh argued.

KIDWELL, Justice.

Iron Eagle Development, L.L.C. (Iron Eagle) and Heartland, L.L.C. (Heartland) appeal from an order granting summary judgment in favor of Quality Design Systems, Inc. (Quality Design) for breach of a "build to suit" lease. We affirm the judgment of the district court.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In late 1999, Quality Design and Iron Eagle negotiated a contract to lease an office building to be built to Quality Design's specifications. The office building was to be built in the Rocky Mountain Business Park in Eagle, Idaho. Quality Design sought a new building to relocate its operations because its lease was to expire on October 31, 2000. On December 20, 1999, Quality Design and Iron Eagle executed a contract to lease a building not yet built.

Heartland, a construction company known to both parties, was not a party to the contract and was not designated as the general contractor in the contract other than a statement that the building would be built per drawings provided by Heartland. However, both Iron Eagle and Quality Design understood that Iron Eagle would employ Heartland's services to build the facility. As a result, two separate contracts existed. First, Quality Design and Iron Eagle entered into a contract whereby Quality Design was to lease a building built to its specifications from Iron Eagle. Second, Iron Eagle and Heartland entered into an agreement for Heartland to construct the building that Iron Eagle was going to lease to Quality Design. Quality Design was not a party to the second agreement.

Quality Design informed Iron Eagle that it needed to move into the new building no later than August 2000 in order to avoid disruption of its business. Iron Eagle informed Quality Design that the building process would take five to six months. The contract provided neither a beginning date for construction nor a move in date; rather, the lease was to begin upon occupancy, defined in the contract as "substantial completion and occupancy allowed by the City of Eagle."

In early April 2000, Quality Design contacted Iron Eagle regarding the status of the project. Iron Eagle informed Quality Design that the City of Eagle had yet to issue any permits, but that the permits would be issued soon. Iron Eagle also informed Quality Design it had not yet obtained financing. Iron Eagle advised Quality Design that in order to obtain financing, Quality Design's president needed to sign a personal guarantee, the lease would have to be changed to triple net terms, and Quality Design would have to release its option to purchase. Quality Design refused Iron Eagle's requested modifications.

On April 10, 2000, Heartland informed Quality Design it would be ready to move forward on construction of the site on April 13, 2000. Quality Design advised Heartland to hold off because it was going to look for alternative properties to lease. As of April 13, 2000, Heartland had yet to obtain the necessary building permits for the project. On April 13, 2000, Quality Design advised Iron Eagle it would proceed with the contract to lease the yet to be constructed building if: (1) the contract's original terms were honored; (2) it was provided a construction schedule establishing a move in date of August 2000; (3) and Iron Eagle provided proof of financing. On April 18, 2000, Heartland provided Quality Design with a letter from Home Federal Savings and Loan (Home Federal) stating Home Federal could not yet commit to the project, but its preliminary review for financing was positive. Quality Design then informed Iron Eagle it would not lease the build to suit facility.

On April 26, 2000, Quality Design advised Iron Eagle, in writing, it would be willing to lease the building if Iron Eagle provided adequate assurances: (1) of financing; (2) that Quality Design would have no obligations for financing to be obtained; (3) that Quality Design's president would not be required to provide a personal guarantee; (4) the option to purchase would remain in the lease; (5) construction would be completed by the end of August 2000; and (6) that Iron Eagle post a performance bond in case of a construction delay. Iron Eagle refused to post a bond. Iron Eagle provided a construction schedule with a completion date of October 16, 2000. On May 12, 2000, Quality Design received a letter from the lender stating approval of the construction loan might occur within two or three days. However, as of that date, the City of Eagle had

not approved the necessary building permits. On May 26, 2000, not receiving all the adequate assurances it asked for, Quality Design leased a preexisting facility in Meridian.

On September 7, 2000, Iron Eagle and Heartland sued Quality Design for breach of an express contract, breach of an intended third party beneficiary contract, and equitable claims including unjust enrichment, quantum meruit, implied contract, quasi estoppel, and equitable estoppel.

On December 22, 2000, Quality Design moved for summary judgment. During a March 26, 2001 hearing, the district court granted partial summary judgment on the appellants' express contract claims. In early April, each party filed motions to reconsider and the appellants filed a motion to set aside and/or amend the complaint. On April 6, 2001, the district court entered a written order of its partial summary judgment. In that same order, the district court also denied the appellants' motion to amend.

On June 29, 2001, the district court entered a memorandum decision and order in which it granted Quality Design's motion to reconsider and denied the appellants' motion to reconsider. On July 10, 2001, the appellants filed a second motion to reconsider, asking the district court to consider the additional claims the appellants identified in their amended complaint. On August 9, 2001, the district court entered an order denying the appellants' motions to reconsider and amend and granted Quality Design's motion for final judgment. On September 27, 2001, following Quality Design's motion for costs and fees, the district court entered an amended judgment awarding costs, fees, and post judgment interest to Quality Design. The appellants timely filed this appeal.

## II.

## STANDARD OF REVIEW

■ Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c) (2002). In a motion for sum-

mary judgment, this Court should liberally construe all facts in favor of the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Northwest Bec–Corp v. Home Living Serv.*, 136 Idaho 835, 838–39, 41 P.3d 263, 266–67 (2002). Summary judgment must be denied if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented. *Id.*

■ A decision to grant or deny a motion to amend a complaint is discretionary. *Trimble v. Engelking*, 134 Idaho 195, 196, 998 P.2d 502, 503 (2000). Absent an abuse of discretion, the Court will not reverse the district judge's ruling. *Id.*

■ On appeal, this Court exercises free review over matters of law. *Polk v. Larrabee*, 135 Idaho 303, 308, 17 P.3d 247, 252 (2000).

## III.

## ANALYSIS

### A. Summary Judgment In Favor of Quality Design Is Affirmed.

#### 1. Quality Design was relieved from rendering performance under the contract.

Iron Eagle argues that the parties entered a build-to-suit construction contract, which Quality Design breached after Iron Eagle began performance, causing out-of-pocket damages and lost profits. Quality Design contends that completion of construction was part of the obligation under the contract, and only thereafter would it incur an obligation to pay rent as it came due.

■ When the terms of a contract are unambiguous, interpretation of the contract and its legal effect are questions of law. *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002) (citing *Idaho v. Hosey*, 134 Idaho 883, 886, 11 P.3d 1101, 1104 (2000)). An unambiguous contract will be given its plain meaning, which is based on the words of the contract. *Id.* The purpose of interpreting a contract is to determine the mutual intent of the contracting

parties at the time the contract was entered. *Id.* at 607, 38 P.3d at 1263. If a contract is determined ambiguous, its interpretation is a question of fact. *Elec. Wholesale Supply Co., Inc. v. Nielson,* 136 Idaho 814, 823, 41 P.3d 242, 251 (citing *State v. Barnett,* 133 Idaho 231, 234, 985 P.2d 111, 114 (1999)).

According to the written contract between Quality Design and Iron Eagle, the lease of the build to suit office building was to begin on "Occupancy." The contract states: "occupancy shall be determined by substantial completion and occupancy allowed by the City of Eagle." Upon occupancy, the tenant, identified in the contract as Quality Design, was to pay the landlord, identified in the contract as Iron Eagle, a sum of $13,804.00 per month. Under the provisions of the contract, Quality Design had no obligation to Iron Eagle until the lease term of the building began. The lease term began upon occupancy, an event that never occurred because Iron Eagle failed to obtain financing or building permits in a timely fashion. The plain language of the contract indicates Quality Design had no obligation until it could occupy the building. Quality Design was unable to occupy the building through no fault of its own. Therefore, this Court affirms summary judgment on Iron Eagle's claim for breach of express contract.

### 2. This Court will not consider the appellants' joint venturer claim.

Iron Eagle and Heartland raise, for the first time on appeal, a theory of recovery based on the assertion they were joint venturers. This Court will not consider an argument raised for the first time on appeal. *See AIA Serv. Corp. v. Idaho State Tax Comm'n,* 136 Idaho 184, 188, 30 P.3d 962, 966 (2001).

### 3. Appellants' equitable claims fail.

Equitable claims will not be considered when an adequate legal remedy is available. *See Thomas v. Campbell,* 107 Idaho 398, 404–05, 690 P.2d 333, 339–40 (1984). When parties enter into an express contract, a claim based in equity is not allowed because the express contract precludes enforcement of equitable claims. *See In re Estate of Boyd,* 134 Idaho 669, 673, 8 P.3d 664, 668 (Ct.App.2000). Quality Design and Iron Eagle entered into an express contract, precluding Iron Eagle's equitable claims against Quality Design. Heartland is also precluded from seeking an equitable remedy against Quality Design because it has an adequate legal remedy under its express agreement with Iron Eagle.

### B. The District Court Properly Denied The Appellants' Motion To Amend Their Complaint.

The appellants sought leave from the district court to amend their complaint. The district court denied their motion for leave to amend their complaint. The appellants assert the district court's denial was error.

A court should liberally grant a motion to amend a complaint. *Hayward v. Valley Vista Care Corp.,* 136 Idaho 342, 345, 33 P.3d 816, 819 (2001). The purpose behind allowing a party to amend its complaint is so all claims will be decided on their merits and to provide notice of the claim and the facts at issue. *Carl H. Christensen Family Trust v. Christensen,* 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999). When reviewing a matter of discretion, "this Court considers whether [the district court] correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed,* 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002).

The district court perceived the issue of whether to grant a motion for leave to amend as one of discretion because it recognized that such motions are to be liberally granted under I.R.C.P. 15(a). The district court acted within the bounds of its discretion and consistently with the applicable legal standards because it recognized it could "consider whether the new claims ... state valid claims" in deciding whether to grant the motion to amend. The district court reasoned that the appellants' equitable claims in the proposed amended complaint did not state valid claims for the same reasons this Court found the equitable claims invalid.

The district court reached its decision by an exercise of reason. Therefore, the district court properly denied the appellants' motion to amend.

### C. The District Court Properly Awarded Attorney Fees To Quality Design At Trial.

 Quality Design was the prevailing party at trial because it received all of the relief it sought when the district court granted summary judgment in its favor on all of the appellants' claims. Therefore, this Court affirms the district court's award of attorney fees to Quality Design.

### D. Quality Design Is Entitled To Attorney Fees On Appeal.

Under I.C. § 12-120(3), the prevailing party in a civil action involving a commercial transaction is entitled to an award of reasonable attorney fees. Idaho Code § 12-120(3) (2002). There is a two-stage analysis necessary to determine whether a prevailing party is entitled to an award of attorney fees under I.C. § 12-120(3). *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 471, 36 P.3d 218, 223 (2001) (citing *Brooks v. Gigray Ranches*, 128 Idaho 72, 910 P.2d 744 (1996)). First, the commercial transaction must be integral to the claim, and second, the commercial transaction must provide the actual basis for recovery. *Id.* A commercial transaction means all transactions except those for personal or household purposes. I.C. § 12-120(3).

In this case, the appellants sued Quality Design for breach of a contract and associated equitable claims based on a contract to lease a build to suit commercial office building. A commercial transaction is the gravamen of this lawsuit. As the prevailing party, Quality Design is entitled to fees related to defense of appellants' claims for breach of contract and equitable claims, which constitute a commercial transaction under I.C. § 12-120(3).

### IV.

### CONCLUSION

Iron Eagle failed to satisfy its obligation under the contract with Quality Design, thus Quality Design never had a duty to perform under the contract. Heartland, as a non-party, has no right to damages based on the contract. Both Iron Eagle and Heartland have adequate legal remedies, neither is entitled to equitable relief. The district court did not abuse its discretion by denying the appellants' motion to amend their complaint because the additional claims cited by the appellants were equitable claims. The district court properly awarded attorney fees under I.C. § 12-120(3). Likewise, on appeal, Quality Design is entitled to reasonable attorney fees. Costs to the respondent.

Chief Justice TROUT and Justices SCHROEDER, WALTERS and EISMANN concur.