94 P.3d 690

**FIELDTURF, INC., a Canadian corporation, Plaintiff–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF ADMINISTRATION, DIVISION OF PUBLIC WORKS, Defendant–Respondent.**

No. 28584.

Supreme Court of Idaho,
Boise, December 2003 Term.

June 30, 2004.

Rehearing Denied July 29, 2004.

McKee, J. Pro Tem, dissented and filed opinion.

Trout, Weeks & Nemec, P.L.L.C., Boise, for appellant. Kim J. Trout argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. James D. Carlson argued.

### SUBSTITUTE OPINION

### THE COURT'S PRIOR OPINION

### DATED JUNE 18, 2004 IS HEREBY WITHDRAWN.

KIDWELL, Justice.

The Respondent, State of Idaho, Department of Administration, Division of Public

Works, (DPW) conducted "a bid invitation and proposal" for the turf replacement at Boise State University's (BSU) Bronco Stadium. The Appellant, Fieldturf, claims it was the lowest responsible and responsive bidder, and DPW's invitation to bid violated I.C. § 67–2309. Fieldturf appeals from a grant of summary judgment by the district court. The Judgment of the district court is affirmed on alternative grounds.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2002, the Respondent, DPW, advertised for bids to complete the turf replacement at BSU's Bronco Stadium. The Appellant, Fieldturf, Inc., (Fieldturf) and its competitor, Southwest Recreational Industries, Inc., (SRI) were the only bidders to the turf replacement project. "Astroturf," manufactured by SRI, and "Fieldturf," manufactured by Fieldturf were products approved by DPW for the project.

The invitation for bids prepared by DPW requested bids on a primary proposal and five additional Alternative proposals, including: (1) inlaid hashmarks; (2) inlaid endzone letters; (3) inlaid centerfield logo and WAC logo; (4) elastic layer shock pad; and (5) secondary pile yarn. The primary proposal is the base project, and the Alternative proposals, or Alternate bids, are additional work that DPW can request that will either add or detract from the overall cost. In other words, Alternatives are additional optional projects to be done by the successful bidder at the option of DPW.

The bidding instructions required that "[a]ll requested Alternatives shall be bid." If an Alternative did not change the base bid, the documents instructed the bidder to enter "No Change" on the bid form. Also, "[s]ums shall be expressed in both words and figures. In case of discrepancy, the amount written in words shall govern." The instructions provided that a "Bid which is in any way incomplete or irregular is subject to rejection." The bid instructions further advised potential bidders that the project contract would be awarded to the lowest qualified bidder who bid in accordance with the bidding docu-

ments and whose bid did not exceed available funds. Additionally, the instructions required that "the Bidder shall carefully study and compare the Bidding Documents with each other . . . and shall at once report to the Architect errors, inconsistencies or ambiguities discovered." "Bidders . . . requiring clarification or interpretation of the Bidding documents shall make a written request which shall reach the Architect at least seven days prior to the date for receipt of Bids."

SRI bid the primary proposal and all five Alternatives. Fieldturf bid the primary proposal and Alternatives One, Two, and Three. Fieldturf did not provide a price for Alternatives Four and Five; rather, Fieldturf placed the numeric figure zero (0) in the numeric figure space. Fieldturf's bid proposal stated "NOT APPLICABLE" in the blanks for pricing instead of indicating "No Change," as the instructions mandated. Attached to Fieldturf's Proposed Bid was a letter stating:

We would like at this point, to explain the reason we have not included Alternative 4 (Elastic layer shock pad) to our bid. Field Turf is designed in such a way that a shock pad is not required with our product. However, we are aware that the elastic shock pad is an integral part of the systems offered by our competitors and cannot be excluded from the installation of their product at Boise.

Field Turf's patented silica and rubber infill precludes the use of secondary yarn, therefore, we have not submitted a price for Alternate 5.

Fieldturf's total bid price was $161,215.03 less than SRI's total bid price because SRI included additional costs for Alternatives Four and Five.

Following the bidding process, DPW sent a letter to Fieldturf informing them that "[y]our bid for the above project has been determined to be nonresponsive due to failure to submit bids for two Alternatives. The contract has been awarded to Southwest Recreational Industries, Leander, Texas, the low responsive bidder."

Fieldturf commenced suit in the district court seeking to find that it was the lowest responsive and responsible bidder on DPW's bid invitation to replace the playing surface at BSU's Bronco Stadium. Fieldturf also

requested the district court award it the contract on the project. At hearing, Fieldturf also argued that the invitation to bid was defective because it sought a bid for a "patented apparatus or appliance when other materials [were] available", in violation of I.C. § 67–2309. DPW moved to dismiss the suit, but the district court turned the motion to dismiss into a motion for summary judgment because the court considered matters outside the pleadings. On appeal, Fieldturf contends that the defect in the bid requires that the Court order DPW to reopen bidding on the project without a requirement that Fieldturf's bid include a bid for a patented apparatus or appliance.

The district court granted summary judgment in favor of DPW on May 22, 2002. Fieldturf then filed a timely Notice of Appeal on May 30, 2002. Fieldturf also filed a Motion For Reconsideration And Stay Pending Appeal on June 4, 2002. The district court denied Fieldturf's Motion For Consideration.

## II.

### STANDARD OF REVIEW

"In reviewing the district court's decision on a motion for summary judgment, the standard of review is whether there are any genuine issues of material fact, and, if not, whether the prevailing party was entitled to a judgment as a matter of law." *Sacred Heart Med. Ctr. v. Boundary County,* 138 Idaho 534, 535, 66 P.3d 238, 239 (Idaho 2003). "If the evidence shows no disputed issues of fact, what remains is a question of law, over which the appellate court exercises free review." *Id.* Therefore, legal questions resolved by a district court are subject to de novo review by this Court. *Doolittle v. Meridian Joint Sch. Dist.,* 128 Idaho 805, 811, 919 P.2d 334, 340 (1996); *see Iron Eagle Dev., L.L.C. v. Quality Design Sys., Inc.,* 138 Idaho 487, 491, 65 P.3d 509, 513 (2003).

## III.

### ANALYSIS

**Despite A Flawed Invitation For Bids, Fieldturf Failed To Follow Proper Objection Procedures**

Although the Boise State University Turf Replacement invitation for bids and bidding instructions were flawed from the outset, Fieldturf failed to follow the objection procedures. DPW's actions during the bidding process are limited by statute. First, DPW must publish an invitation for bids that includes a project description "and all contractual terms and conditions applicable to the public works." I.C. § 67–5711C(2) "All construction contracts for public works shall be awarded to the lowest responsible and responsive bidder ...," after all bids are received by DPW. *Id.*

Fieldturf claims it was entitled to the turf contract because it was the lowest responsible and responsive bidder. However, DPW sent a letter to Fieldturf stating: "[y]our bid for the above project has been determined to be nonresponsive due to failure to submit bids for two alternatives." The district court agreed with DPW's action by ruling Fieldturf's "failure to provide prices for Alternatives Four and Five deviated from the bid invitation and caused the Plaintiff's bid to be unresponsive." But, the bidding instructions were drafted in a manner so that SRI was the only possible bidder who could comply with DPW's primary proposal and all five Alternatives. In other words, DPW sought a sole source procurement because only one vendor could comply with DPW's project specifications. *See* I.C. § 67–5733(1)(d); I.C. § 67–5720(2).

The bidding instructions required that "the Bidder shall carefully study and compare the Bidding Documents with each other ... and shall at once report to the Architect errors, inconsistencies or ambiguities discovered." "Bidders ... requiring clarification or interpretation of the Bidding documents shall make a written request which shall reach the Architect at least seven days prior to the date for receipt of Bids." Because the bidding instructions were flawed and amounted to a sole source procurement, Fieldturf should have objected to the Architect seven days prior to the receipt of the bids. Instead, Fieldturf sent a letter to DPW attached to its Proposed Bid stating:

We would like at this point, to explain the reason we have not included Alterna-

tive 4 (Elastic layer shock pad) to our bid. Field Turf is designed in such a way that a shock pad is not required with our product. However, we are aware that the elastic shock pad is an integral part of the systems offered by our competitors and cannot be excluded from the installation of their product at Boise.

Field Turf's patented silica and rubber infill precludes the use of secondary yarn, therefore, we have not submitted a price for Alternate 5.

The letter evinces that Fieldturf was on notice that it could not comply entirely with the bid instructions and that the bid instructions were flawed. Therefore, Fieldturf should have followed the proper objection procedures by making a written request or complaint to the Architect at least seven days prior to the date for receipt of Bids instead of waiting to explain itself in a letter attached to its Proposed Bid.

In addition to the requirement that Fieldturf give notice to the Architect which it neglected to do, I.C. § 67–5733 provides a statutory appeal process that Fieldturf also failed to follow. Section 67–5733(1)(a) states that prior to the submission of bids, "[t]here shall be, beginning with the day of receipt of notice, a period of not more than ten (10) working days in which any vendor qualified and able to sell or supply the items to be acquired, may notify in writing the administrator of the division of purchasing of his intention to challenge the specifications and shall specifically state the exact nature of his challenge." I.C. § 67–5733(1)(a). Section 67–5733(1)(b) requires that after the submission of bids, "[t]here shall be, ... following receipt of notice of rejection ... in which a bidder whose bid was found nonresponsive may appeal such decision to the director of the department of administration." I.C. § 67–5733(1)(b). Additionally, after a bid is considered but deemed to not be the lowest responsible bid, a bidder may "apply to the director of the department of administration for appointment of a determinations officer." I.C. § 67–5733(1)(c). Fieldturf failed to follow these appeals procedures; instead, Fieldturf attached an explanatory letter to its Proposed Bid and then later filed suit following DPW's determination that Fieldturf's bid was nonresponsive.

In conclusion, DPW's invitation for bids and bidding instructions were flawed. Nevertheless, this Court holds Fieldturf waived its right to contest the process by failing to follow both procedures for contesting errors, inconsistencies, and ambiguities within the bidding documents and by failing to follow the statutory appeal process to challenge the bid documents or DPW's determination.

## IV.

### CONCLUSION

We hold that DPW's invitation for bids and bidding instructions were flawed. Nevertheless, Fieldturf waived its right to contest the bidding process by failing to follow both the procedures for contesting errors, inconsistencies, and ambiguities within the bidding documents, and by failing to follow the statutory appeal process to challenge the bid documents or DPW's determination. Therefore, the Judgment of the district court is affirmed on alternative grounds.

Justices SCHROEDER, EISMANN, and BURDICK concur.

McKEE, J. Pro Tem dissents:

I respectfully dissent from the majority decision concluding that Fieldturf has waived its right to a remedy in this case by failing to follow procedures spelled out in the notice for bid and in Idaho Code § 67–5733.

The invitation for bids does contain a mechanism for prospective bidders to notify the state if they believe the specifications contain ambiguities. However, the record is devoid of any evidence to support the conclusions stated by the majority that this mechanism is a prerequisite to claiming a breach, or that a prospective bidder would waive any rights if this mechanism were not followed.

The majority conclusion that failing to follow the strictures of Idaho Code § 67–5733 operates as a waiver, or somehow restricts the remedies available to an objecting bidder, is also flawed. I.C. § 67–5729, which introduces the cited section, states, "This section shall not impair any contract right or con-

tract remedy which may exist between the state and a properly licensed contractor or vendor."

Although the state's attorney objected to the remedies requested on other grounds, neither of the issues relied upon by the majority to eliminate Fieldturf's remedies in this case were raised before the district court, addressed in the district court's decision, contained in the briefing on appeal or argued at oral hearing. Neither the reach of the provision in the invitation for bids nor the extent of the statute has been construed in any other Idaho case. By providing that any bidder who does not follow the notification mechanism to object in advance of a bid opening will be deemed to have waived its rights to object later, and further construing that the provisions of I.C. § 67–5733 provide the exclusive remedy to challenge a defective bid procedure, notwithstanding the provisions of I.C. § 67–5729, the majority has wandered into an area it was not invited to explore and invented waivers and restrictions on remedies it was not asked to do, purely *sua sponte.* It has done so without the analysis of counsel for the parties and on an abbreviated record that does not contain facts sufficient to illuminate the necessary assumptions for a declaration of law, one way or the other.

While the record is sufficient to necessitate a reversal of the order granting summary judgment, on the limited record available to this appeal I would reverse the order of the district judge and remand the matter for a full exploration and consideration of all issues and remedies by the district court.