99 P.3d 1069

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Richard W. HOYLE, Defendant– Appellant.**

**No. 30084.**

Supreme Court of Idaho, Boise, April 2004 Term.

July 21, 2004.

Order Denying Rehearing Oct. 28, 2004.

Andrew Parnes, Ketchum, and Peterson Law Offices, Boise, for Appellant. Andrew Parnes argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

KIDWELL, Justice.

This is an appeal from a denial of a Motion for Judgment of Acquittal after a jury trial where the district court ruled a mistrial as to Count B, racketeering. The judgment of the district court is affirmed.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Richard W. Hoyle (Hoyle), the Appellant, owned and operated Hoyle & Associates Insurance, Inc. (Hoyle Insurance), in Boise since 1979. Hoyle Insurance was very successful. On January 1, 1996, Hoyle sold Hoyle Insurance to First Security Insurance (FSI), which continued to operate as Hoyle Insurance. After the sale, FSI employed Hoyle as Vice President and Sales Manager. Before and after the sale, Hoyle directed certain employees to make accounting entries regarding customer accounts, and to prepare and submit certain insurance applications, including loss run reports.

On June 12, 1997, Hoyle was indicted on eight felony counts which charged him with racketeering in connection with his insurance agency. The charge under I.C. § 18–7804 was predicated upon 165 alleged criminal acts, but after amendments and elimination at trial, the jury was left to consider just Counts A, E, and only 30 allegedly predicate acts under Count B. On June 11, 1999, the jury found Hoyle not guilty on Counts A and E and 23 predicate acts under Count B. The jury could not reach a unanimous verdict on the seven remaining acts under Count B and Hoyle moved for a mistrial. The court dismissed and entered judgment of acquittal on Counts A and E and dismissed the 23 predicate acts on which the jury agreed. Hoyle then filed a Motion of Acquittal on Count B and the state filed a Motion for New Trial on Count B. On August 11, 1999, the district court ruled the jury had not entered a verdict on Count B or the seven predicate acts on which it could not agree, and denied

Hoyle's Motion for Acquittal and granted the Motion for A New Trial.

On August 17, 2000, the state informed the court that it would not proceed to retrial on Count B because a second prosecution was filed, Case No. H0000795 (Case 795). Case 795 charged Hoyle with five of the seven predicate acts, but did not charge Hoyle with racketeering. The state informed the court that it would move to amend the indictment in Case 795. If the district court granted the motion, the state offered to dismiss the instant case. Hoyle then moved for a mistrial.

On September 11, 2000, the date of retrial for Count B, the state again informed the district court that it would not proceed with the instant case and prosecution of Count B. Hoyle argued that he was ready to proceed to trial. Hoyle stated that if the state were not going to proceed, he would renew his Motion for Judgment of Acquittal. The state responded that it intended to consolidate the instant case and Case 795. Thereafter, the instant case was dismissed without prejudice. Hoyle timely appealed to the Court of Appeals. The Court of Appeals affirmed the district court. Hoyle timely appeals to this Court.

## II.

## STANDARD OF REVIEW

■■■ "Findings of fact cannot be set aside on appeal unless they are clearly erroneous, i.e., not supported by substantial, competent evidence." *Kohring v. Robertson,* 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002) (citing *Savage Lateral Ditch Water Users Ass'n v. Pulley,* 125 Idaho 237, 241–42, 869 P.2d 554, 558–59 (1993)). Legal questions are subject to *de novo* review by this Court. *Doolittle v. Meridian Joint Sch. Dist.,* 128 Idaho 805, 811, 919 P.2d 334, 340 (1996); *see Iron Eagle Dev., L.L.C. v. Quality Design Sys., Inc.,* 138 Idaho 487, 491, 65 P.3d 509, 513 (2003). The applicable standard of review for sufficiency of the evidence for a motion for judgment of acquittal is at issue in this appeal; therefore, it is discussed in the analysis section.

## III.

## ANALYSIS

### A. Hoyle's Appeal Is Moot With Regards To His Suppression Challenge, But Not His Prosecutorial Challenge.

■■■ An issue is not moot if it constitutes an "actual or justiciable controversy." *Idaho Sch. For Equal Educ. Opportunity v. Idaho State Bd. Of Educ.,* 128 Idaho 276, 281–82, 912 P.2d 644, 649–50 (1996). Justiciable issues are controversies that are real and substantial and can be concluded through the grant of relief by a court. *Id.* Idaho law parallels the United States Supreme Court in that mootness applies not only to a dead issue, but also when the appellant lacks a legal interest in the outcome. *Murphy v. Hunt,* 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353, 356–57 (1982); *Bradshaw v. State,* 120 Idaho 429, 432, 816 P.2d 986, 989 (1991). Thus, this Court cannot hear and resolve an issue that "presents no justiciable controversy and a judicial determination will have no practical effect on the outcome." *Idaho Sch. For Equal Educ. Opportunity,* 128 Idaho at 281, 912 P.2d at 649.

■■■ A mootness exception exists where the challenged conduct is of such a limited duration as to prohibit full litigation prior to termination of the conduct. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 352–53 (1975). Moreover, the complainant could be expected to engage in the same conduct. *Id.* Therefore, the mootness doctrine is limited by the "capable of repetition, yet evading review" exception. *Mallery v. Lewis,* 106 Idaho 227, 234, 678 P.2d 19, 26 (1983). A second exception looks to the justiciability of an issue that, although now appears dead, impacts the general public. *Idaho Sch. For Equal Educ. Opportunity,* 128 Idaho at 284, 912 P.2d at 652; *Bradshaw v. State,* 120 Idaho 429, 432, 816 P.2d 986, 989 (1991). A third exception exists when the challenger continues to face an impact from the same dead issue. *Adams v. Killeen,* 115 Idaho 1034, 1035, 772 P.2d 241, 242 (Ct.App.1989).

### 1. Suppression Challenge

 Hoyle argued to the Court of Appeals that the warrants used to search his personal and real estate office located within Hoyle's Insurance offices were overbroad and vague. The Court of Appeals properly determined that issue was moot and affirmed the district court because: (1) the instant case was dismissed; (2) Hoyle was acquitted of Counts A and E and most of the predicate acts to Count B; and (3) Hoyle was neither convicted nor acquitted on the remaining seven Acts of Count B, or Count B itself. Therefore, the district court is affirmed because there remains no justiciable controversy.

### 2. Prosecutorial Authority Challenge

 Hoyle argues that Deputy Attorney General Dennis Charney prosecuted independently of the Ada County Prosecutor and thereby exceeded his statutory duties in violation of I.C. § 67–1401 and violated Mr. Hoyle's state and federal constitutional rights to due process and equal protection. However, the Court of Appeals properly determined that the issue of the Attorney General's conduct is no longer justiciable, so any determination has no effect and is moot.

### B. The District Court Did Not Err In Denying Hoyle's Motion For Acquittal Based On The Verdict Form.

 In its decision, the Court of Appeals noted that if Hoyle's Motion for Judgment of Acquittal should have been granted by the district court, double jeopardy bars Hoyle's subsequent prosecution in Case 795 because the predicate acts at issue constitute lesser-included offenses of racketeering as charged in Count B. *Sivak v. State*, 112 Idaho 197, 210–15, 731 P.2d 192, 205–10 (1986). As such, Hoyle's challenge is justiciable under the "collateral legal consequences" exception. *Russell v. Fortney*, 111 Idaho 181, 183, 722 P.2d 490, 492 (Ct.App.1986).

 The issue is whether the district court properly granted a mistrial. A district court's decision to declare a mistrial is discretionary. *United States v. Cawley*, 630 F.2d 1345, 1349 (9th Cir.1980); *State v. Lee*, 131 Idaho 600, 605–07, 961 P.2d 1203, 1208–10 (Ct.App.1998). A deadlocked jury presents a "manifest necessity" justifying a mistrial declaration. *State v. Sharp*, 104 Idaho 691, 693, 662 P.2d 1135, 1137 (1983). The Court of Appeals properly held that the district court did not abuse its discretion in declaring a mistrial because the jury did not return a unanimous verdict on Count B or the seven predicate acts. Therefore, we hold the district court did not abuse its discretion in declaring a mistrial because the jury failed to return a unanimous verdict.

### C. The District Court Did Not Err In Denying Hoyle's Motion For Judgment Of Acquittal.

After the jury returned its verdict, Hoyle moved the district court for a judgment of acquittal from Count B pursuant to I.C.R. 29(c) because the jury could not agree as to seven predicate acts. "If no verdict is returned the court may enter a judgment of acquittal." I.C.R. 29(c). The district court denied Hoyle's motion. The Court of Appeals stated "[w]hen we review the grant or denial for judgment of acquittal, we examine the record for sufficiency of the evidence ... the trial court must deny the motion if there is some evidence of guilt produced at trial." *State of Idaho v. Hoyle*, 2003 Opinion No. 19 at 10; (quoting *State v. Griffith*, 127 Idaho 8, 11, 896 P.2d 334, 337 (1995)). Hoyle contends that the proper standard is whether there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

 When reviewing a decision on a motion for judgment of acquittal, older Idaho case law required evidence "sufficient to sustain a conviction of the offense." *State v. Greene*, 100 Idaho 464, 466, 600 P.2d 140, 142 (1979); *State v. Holder*, 100 Idaho 129, 594 P.2d 639, 641, 642 (1979). More recently, this Court further explained that "[o]n review of the denial of a motion for judgment of acquittal, the appellate court ... determine[s] whether there is substantial evidence to support the challenged conviction." *State v. Merwin*, 131 Idaho 642, 644, 962 P.2d 1026, 1029 (1998); *State v. Rhode*, 133 Idaho 459,

461, 988 P.2d 685, 687 (1999). Substantial evidence to support the challenged conviction is present when "a reasonable mind could conclude that the defendant's guilt as to such material evidence of the offense was proven beyond a reasonable doubt." *State v. Grube,* 126 Idaho 377, 386, 883 P.2d 1069, 1078 (1994); *State v. Kuzmichev,* 132 Idaho 536, 546, 976 P.2d 462, 472 (1999); *State v. Bronnenberg,* 124 Idaho 67, 71, 856 P.2d 104, 107 (Ct.App.1993); *State v. Gonzalez,* 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct.App.2000); *State v. Babb,* 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App.2000); *State v. Hamilton,* 129 Idaho 938, 942, 935 P.2d 201, 205 (Ct. App.1997); *State v. Kopsa,* 126 Idaho 512, 522, 887 P.2d 57, 67 (Ct.App.1994). Therefore, the weight of authority suggests the proper language to describe the standard for reviewing a motion for acquittal is whether there was substantial evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The *Griffith* decision, upon which the Court of Appeals relied, applies a standard of review stating that "[t]he trial court must deny the motion [for judgment of acquittal] if there is some evidence of guilt produced at trial." *State v. Griffith,* 127 Idaho 8, 11, 896 P.2d 334, 337 (1995). The "some evidence" language used by the *Griffith* Court is imprecise. Other than the *Hoyle* decision, the two cases that cite to *Griffith* do not adopt the "some evidence of guilt" language. In *State v. Cheatham* 134 Idaho 565, 6 P.3d 815 (2000), the Court cited *Griffith* for two propositions. First, "we examine the record for sufficiency of the evidence supporting the trial court's determination.... Second, [w]e independently review the record to determine if there is no evidence upon which a guilty verdict could be based." *Id.* at 569, 6 P.3d at 819. In other words, the *Cheatham* Court, by using the "sufficiency of the evidence" language, perhaps is using older terminology, but is nonetheless restating differently the same standard of review for motions for judgments of acquittals as the more recent cases have characterized as "substantial evidence." Additionally, in *State v. Morgan* 134 Idaho 331, 1 P.3d 832 (Ct.App.2000), the Court of Ap-

peals only cites *Griffith* for the proposition that "[a] motion for acquittal should only be granted where there is no evidence produced at trial to support the conviction." *Id.* at 332, 1 P.3d at 833. Thus, *Morgan* also does not adopt the "some evidence of guilt" language; rather, the terminology used in *Morgan* is "[w]here a trial court's findings of fact are supported by substantial and competent evidence upon which a reasonable trier of fact could find the essential elements of a crime established beyond a reasonable doubt, those findings will not be disturbed on appeal." *Id.*

■■■ In summation, the language used in *Griffith* to describe the standard of review for a motion for judgment of acquittal is imprecise, justifying clarification by this Court. The proper description of the standard of review for a motion for judgment of acquittal under I.C.R. 29(c) is whether there was substantial evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

■■■ Applying this standard, each predicate act under Count B that the jury could not decide must be analyzed to determine whether the district court properly denied Hoyle's motion for judgment of acquittal. "Where there is competent although conflicting evidence to sustain the verdict, this court cannot reweigh that evidence or disturb the verdict." *Merwin,* 131 Idaho at 644–45, 962 P.2d at 1028–29. "In reviewing a motion for judgment of acquittal ... all reasonable inferences on appeal are taken in favor of the prosecution." *Kuzmichev,* 132 Idaho at 545, 976 P.2d at 471; *Grube,* 126 Idaho at 386, 883 P.2d at 1078.

As the Court of Appeals discussed, the district court dismissed the instant case and the state has abandoned its prosecution for alleged Acts 9 and 62; as such, these Acts are moot and will not be analyzed.

The state charged Hoyle under Count B with racketeering under I.C. § 18–7804 which states, in relevant part:

(a) It is unlawful for any person who has received any proceeds derived directly

or indirectly from a pattern of racketeering activity in which the person has participated, to use or invest, directly or indirectly, any part of the proceeds or the proceeds derived from the investment or use thereof in the acquisition of an interest in, or the establishment or operation of, any enterprise or real property.

Prosecution of a Racketeering charge requires a defendant to commit certain predicate acts. " 'Racketeering' means any act which is chargeable or indictable under [certain] sections of the Idaho Code." I.C. § 18–7803. Included are the predicate acts of larceny and insurance fraud, with which Hoyle was charged. I.C. § 18–7803(a)(2), (10). " 'Pattern of racketeering activity' means engaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents...." I.C. § 18–7803(d). In short, as an initial inquiry, for Hoyle to be guilty of Count B racketeering, he must have committed at least two predicate criminal acts. The jury could not agree on seven predicate acts of grand theft and insurance fraud. Therefore, each predicate act must be analyzed.

### 1. Grand Theft Evidence

Theft is defined as: "(1) [a] person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself, or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof. (2) Theft includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subsection (1) of this section ..." I.C. § 18–2403(1) and (2). "A person is guilty of grand theft when he commits a theft as defined in this chapter and when: 1.[t]he value of the property taken exceeds three hundred dollars." I.C. § 18–2407(1)(b)(1). Predicate Act 10 charged Hoyle with grand theft of insurance premiums in an amount between $300 and $763.74 from the Community House, and Predicate Act 11 charged Hoyle with grand theft of insurance premiums from Bairds Dry Cleaners (Bairds) for an amount between $300 and $2650.

Regarding Act 10, as of January 31, 1997, the record reflects that Community House had a $683.67 credit balance on its account. Hoyle's bookkeeper, Jill Equals, zeroed out this balance and transferred it to the commissions account upon written instructions from Hoyle. Hoyle committed a wrongful taking because the Community House was entitled to a credit on its account, but Hoyle instructed the credit be placed in his commissions account. A commission account represents income to Hoyle. With inferences drawn in favor of the prosecution, Hoyle transferred a credit valuing over $300, intending to deprive Community House and appropriate to himself, as evinced by placing the credit in his commissions account. Therefore, there is substantial and competent evidence that Hoyle committed grand theft for Predicate Act 10.

As to Act 11, the evidence in the record shows Bairds sent a double payment to Hoyle Insurance amounting to a credit of $2750. Hoyle Insurance sent back $100 to Bairds as a deductible waiver, leaving a credit to Bairds of $2650. Bairds' premium payment of $2750 was a duplicate payment, and Jill Equals, the bookkeeper, informed Hoyle of this fact. Hoyle again directed the $2650 credit be transferred to his commissions account. As above, including inferences drawn in favor of the prosecution, Hoyle transferred a credit valuing over $300, intending to deprive Bairds, the lawful owner, and appropriated to himself, as evinced by placing the credit in his commissions account. Therefore, there is substantial and competent evidence that Hoyle committed grand theft for Predicate Act 11.

### 2. Insurance Fraud Evidence

Hoyle was also charged with insurance fraud pursuant to I.C. § 41–293(1)(c) in Predicate Acts 108, 115 and 118 for the submission of allegedly materially false applications for insurance, upon which the jury could not agree. The form of insurance fraud as charged to Hoyle is defined as "[a]ny insurance agent or other person who

with intent to defraud or deceive and insurer presents or causes to be presented to or by an insurer, a purported insurer or agent, a materially false or altered application of insurance." I.C. § 41–293(1)(c).

Act 108 involved an insurance application comprised of Sta–Bax, Harry's Dry Dock & Winter Sports (Harry's Dry Dock), and Sports Marina, Inc. The properties that were applying for insurance were misrepresented to the insurer by way of the applicant's loss history. As determined by the Court of Appeals, Karen Boyd, a Hoyle Insurance marketer, obtained premium quotes and processed applications as well as policy changes. Hoyle requested Boyd to submit an application for Harry's Dry Dock. Boyd asked Hoyle to review the application and for his permission to order loss runs from the client's prior insurers. These loss runs concerned American States Insurance Company (American States). American States previously refused to renew the client's policy due to a claim against the policy for a boat storage facility loss. In writing, Hoyle instructed Boyd to submit the client's application using the Sports Marina name to American States, without disclosing Harry's Dry Dock on the insurance application. Further, Hoyle told Boyd that Harry's Dry Dock would be added to the Sports Marina policy after it was issued and after American States moved its operation to Seattle. This way the Salt Lake City underwriter who had sent the nonrenewal notice would be avoided.

Hoyle intentionally attempted to hide the loss history associated with Harry's Dry Dock by submitting an insurance application in a false name and failing to disclose all parties that were seeking insurance. Therefore, these misrepresentations amount to a violation of I.C. § 41–293(1)(c) resulting in substantial and competent evidence that Hoyle committed insurance fraud for Predicate Act 108.

Regarding Act 115, Boyd prepared and submitted an insurance application to Kemper on behalf of Stiforp. Hoyle directed Boyd to pull the loss reports prepared by American States Insurance for Larsen of Idaho (Larsen), which showed no losses, and do one similar to it. Based upon these in-

structions, Boyd took loss reports prepared by American States for Larsens, massaged them, and submitted them to Kemper, representing them to be Stiforp's loss runs from American States. Hoyle contends there is neither evidence in the trial record that Stiforp had any losses which were kept from the insurance company, nor did he possess an intent to deceive. Further, there is nothing inherently criminal in Hoyle's instruction to Boyd, unless Stiforp itself had experienced a loss which was being hidden. Nevertheless, during this time, Hoyle Insurance had Stiforp's loss runs from Mattei & Associates. Hoyle Insurance did not send these reports to Kemper; rather, the doctored loss runs were sent. Because the actual loss runs could have been sent, but Hoyle chose to send the doctored loss runs, the evidence suggests Hoyle had the intent to defraud or deceive. Therefore, there is substantial and competent evidence that Hoyle committed insurance fraud for Predicate Act 115.

Lastly, Predicate Act 118 alleged that Hoyle instructed Boyd to include three vehicles belonging to Today's Child, formerly owned by Ron LaFever, but currently owned by Jerry and Julie Heinrichs, to an existing policy for LaFever Roofing (LaFever). Thus, the representation to insurers was that Today's Child's vehicles belonged to LaFever. The record shows the coverage for the three Today's Child vehicles had been removed from the LaFever policy with Ohio Casualty. Hoyle Insurance submitted an application in October 1995 for Today's Child seeking coverage for those vehicles using incorrect owners. Then, Hoyle instructed Boyd, effective November 1, 1995, to add the vehicles back onto the LaFever policy. Thereafter, Boyd sent a facsimile to the underwriter falsely stating the vehicles were mistakenly deleted from the LaFever policy.

In approximately March 1997, Continental Western declined to provide an insurance quote for Today's Child because it declined vehicle coverage for day care centers. Boyd inquired of Hoyle whether to submit the Today's Child application to a different suitable carrier. Hoyle instructed Boyd to leave coverage for the vehicles on the LaFever policy with Ohio Casualty, but then change

the policy to the Heinrichs' name when Hoyle Insurance transferred the LaFever account to another carrier. Therefore, the record shows there is substantial and competent evidence that Hoyle committed insurance fraud for Predicate Act 118.

■ As explained above, the record reflects substantial and competent evidence upon which a trier of fact could have found the essential elements of both the grand larceny and insurance fraud crimes beyond a reasonable doubt, satisfying the pattern of racketeering element of the Count B racketeering charge. Moreover, the record reflects evidence of the other portion of a racketeering offense. Once a pattern of racketeering activity is established, it is unlawful "to use or invest, directly or indirectly, any part of the proceeds or the proceeds derived from the investment or use thereof in the acquisition of an interest in, or the establishment or operation of, any enterprise or real property." I.C. § 18-7804.

Hoyle received an annual salary of $174,000 from FSI and/or Hoyle Insurance, plus commissions for his own sales, a non-competition payment of $25,000, and other payments. Also, the evidence reflects Hoyle used all or part of the proceeds from his "pattern of racketeering" to operate Hoyle Real Estate. Additionally, funds from Hoyle's racketeering activities went back to the operation of Hoyle Insurance. Thus, Hoyle used the proceeds of his racketeering endeavors to fund Hoyle Real Estate, which is a real estate enterprise, and Hoyle Insurance. Therefore, the district court is affirmed because substantial and competent evidence exists in the record upon which a trier of fact could have found all the essential elements of Hoyle's Count B racketeering charge.

In conclusion, we hold the proper phraseology for the standard of review for a motion for judgment of acquittal under I.C.R. 29(c) is whether there was substantial evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Also, the record reflects substantial and competent evidence to satisfy all the elements of Hoyle's Count B racketeering charge.

### D. I.C. § 18-301 Does Not Apply To This Case.

■ Hoyle argues that Idaho's "double jeopardy" statute, I.C. § 18-301, protects him against later prosecution. The Court of Appeals correctly determined that the statute was inapplicable because on February 13, 1995, it was repealed. The earliest of Hoyle's conduct did not occur for several months after the statute was repealed.

### E. This Court Declines To Adopt A Rule Which Requires The State To Bring All Related Charges In One Case.

■ Hoyle asks this Court to adopt a rule similar to California's that requires a prosecutor to bring "all related charges at the time of the original filing." *Kellett v. Superior Court,* 63 Cal.2d 822, 48 Cal.Rptr. 366, 409 P.2d 206 (1966). However, Hoyle raised the issue for the first time in his reply brief to the Court of Appeals by asking the court to adopt the California rule. Hoyle admits that "the Court of Appeal [sic] did not reach the issue of trying all related charges in one proceeding." Therefore, no Idaho court has ruled on Hoyle's issue. To "raise an issue on appeal, the record must contain an adverse ruling to form the basis for assignment of error and this Court will not consider or review an issue raised for the first time on appeal." *Magnuson Prop. P'ship v. City of Coeur D'Alene,* 133 Idaho 166, 170, 59 P.3d 971, 975 (2002). The issue of whether to adopt the rule that all related charges must be brought at one time is not properly before this Court and cannot thereby be decided on the merits.

### IV.

### CONCLUSION

We agree with the Court of Appeals' reasoning in holding that Hoyle's suppression and prosecutorial challenges are moot and in concluding the district court did not abuse its discretion in declaring a mistrial because the jury did not return a unanimous verdict. Also, the proper terminology describing the

standard of review for a motion for judgment of acquittal under I.C.R. 29(c) is whether there was substantial and competent evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We affirm the district court in denying Hoyle's Motion for Acquittal for Count B racketeering because substantial and competent evidence exists in the record to satisfy all the elements of racketeering. Moreover, we adopt the Court of Appeals' reasoning and conclusion and determine that I.C. § 18–301 is inapplicable. Lastly, the issue of whether to adopt a rule "that all related charges must be brought at one time" is not properly before this Court. The judgment of the district court is affirmed.

Justice SCHROEDER concurs.

Chief Justice TROUT concurs in the result of Part III C; concurs fully in the balance of the opinion.

While I agree with the ultimate outcome of this opinion, I write only to indicate my disagreement with the analysis of this Court's standard of review of a district judge's ruling on a motion for judgment of acquittal. Admittedly, this Court has not always utilized the same words in describing our standard of review, sometimes speaking of "substantial evidence," "no evidence," or "some evidence," and the standard has varied depending upon whether the Court is reviewing a grant or a denial of the motion.

For that reason, in *State v. Griffith,* 127 Idaho 8, 896 P.2d 334 (1995), the Court attempted to articulate the standard when an appellate court is reviewing the trial court's decision either granting or denying a motion for acquittal. Unfortunately, in the majority opinion, the Court characterizes that effort as "imprecise, justifying clarification by this Court" and then proceeds to articulate the standard as "whether there was substantial evidence upon which a trier of fact could have found the essential elements of the crime beyond a reasonable doubt," citing I.C.R. 29(c). That is the standard to be applied by the trial court in making the initial determination on a motion for judgment of acquittal, not the standard to be

applied by an appellate court in reviewing the trial court's decision on the motion. As articulated in *Griffith,* the standard is as follows:

> When we review the grant or denial of a motion for judgment of acquittal, we examine the record for sufficiency of the evidence supporting the trial court's determination. The trial court must deny the motion if there is *some* evidence of guilt produced at trial. *State v. Gratiot,* 104 Idaho 782, 663 P.2d 1084 (1983). Conversely, the motion shall be granted if the record reflects a total lack of inculpatory evidence at trial. *State v. Vargas,* 100 Idaho 658, 659, 603 P.2d 992, 993 (1979) (citing *State v. O'Bryan,* 96 Idaho 548, 531 P.2d 1193 (1975))(emphasis added).

127 Idaho at 11, 896 P.2d at 337.

The review of a ruling on a motion for acquittal is basically two sides of the same coin. Both are judged on the sufficiency of the evidence presented below, but it is not this Court's place to weigh the evidence to determine whether it is "substantial"; that is for the trial court. This Court is to determine whether there is "no evidence," justifying the trial court's grant of a motion for acquittal; or there is "some evidence," justifying the trial court's denial of the motion for acquittal. Beyond that we should not engage in any determination required by Rule 29 as to the sufficiency of the evidence and should leave that to the trial court's sound judgment, having observed the evidence and witnesses firsthand.

In this case, I agree that under the standard set forth in *Griffith,* the trial court was correct in denying the motion for judgment of acquittal and I, therefore, concur in the result.

Justice EISMANN, dissenting.

Because the further prosecution of the defendant would violate his rights under the double jeopardy clauses of the state and federal constitutions, I respectfully dissent.

The majority opinion does not even address Hoyle's contention that the Double Jeopardy Clauses of the State and Federal Constitutions bar his continued prosecution.

Therefore, I will begin by stating the relevant facts. On March 31, 1989, the State filed an amended indictment charging Hoyle with eight felonies. They were: soliciting the destruction of evidence (Count A), racketeering (Count B), misappropriation of premium funds (Counts C, D, F, G, and H), and solicitation of grand theft (Count E). In connection with the racketeering charge, the indictment also alleged 114 predicate acts, each of which would be a felony if charged separately. In addition, the State alleged that Hoyle had committed the crime of racketeering under both the "investment" theory (Idaho Code § 18–7804(a)) and the "participation" theory (Idaho Code § 18–7804(c)).

By the time the case was submitted to the jury, only two charges (soliciting the destruction of evidence and racketeering) remained, and all but thirty of the alleged predicate acts had been stricken. On June 12, 1999, the jury returned its verdict finding Hoyle not guilty of both soliciting the destruction of evidence and racketeering. After marking on the verdict that Hoyle was not guilty of racketeering under both the investment theory and the participation theory, the presiding juror wrote, "Except as to the seven predicate acts upon which we could not reach unanimous agreement." Thus, the first question is the significance of that notation.

That notation did not in any way limit the scope or effect of the not guilty verdicts. The State did not charge the predicate acts as separate offenses, nor was the jury instructed that they were included offenses to consider if they found Hoyle not guilty of the greater charge of racketeering. Rather, the district court in this case asked the jury to determine whether the State had proven that Hoyle committed each of the thirty alleged predicate acts as elements of the racketeering charge. This was consistent with the United States Supreme Court's construction of a federal continuing criminal enterprise (CCE) statute in *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (to convict a defendant of engaging in a CCE, the jury must unanimously and separately agree upon each of the individual violations that constitute the series of violations required for a conviction under the statute).

The jury returned a verdict of not guilty as to twenty-three of the predicate acts and indicated that it could not reach a unanimous decision as to the remaining seven predicate acts. The jury was not required to unanimously agree upon the predicate acts in order to return a verdict of not guilty on the charge of racketeering, however. If the jury unanimously concluded that the State had failed to prove one element of the racketeering charge (such as a pattern of racketeering activity), then it must return a verdict of not guilty to racketeering regardless of whether it unanimously agreed upon any other element (such as the predicate acts). To find someone not guilty, the jury need not unanimously agree that the State has failed to prove all of the elements of the crime charged. It need only unanimously agree that the State has failed to prove one of the elements of the crime. Thus, the jury could return a verdict of not guilty to racketeering even though it could not unanimously agree upon the seven predicate acts, which is what the jury did in this case. The jury was not deadlocked on the racketeering charge. It was deadlocked on seven predicate acts, which were simply elements of the racketeering charge. It was unanimous, however, that the State had failed to prove racketeering.

With respect to each of the thirty predicate acts, the verdict form asked the jury to "[c]heck the appropriate box to reflect your verdict." For each predicate act, there was a line designated "Guilty" and a line designated "Not Guilty." Twenty-three times the presiding juror placed a checkmark on the line designated "Not Guilty." With respect to the seven predicate acts upon which the jury could not agree, the presiding juror did not make any marks on the designated lines. Rather, seven times he wrote "NO AGMT" in the margin to the right of those lines. With respect to the racketeering charge, the verdict form directed the jury as follows:

Considering your answers to the foregoing questions under the heading "Count B", and considering all the other required elements of the crime of racketeering, you must decide whether the state proved or

failed to prove beyond a reasonable doubt that the defendant committed the crime of racketeering under the "investment" theory and the "participation" theory.

The questions under the heading "Count B" had two parts. The first part was the question, "Did the defendant commit at least two incident [sic] of racketeering conduct?" The presiding juror checked the line marked "No" and added, "Except as to the seven predicate acts upon which we could not reach unanimous agreement." The second part consisted of the jury's answers to whether the State had proven each of the thirty predicate acts. When returning a verdict on racketeering, the jury was instructed to consider its answers regarding the predicate acts and "all the other required elements of the crime of racketeering." After considering its answers to the questions regarding the predicate acts and "all the other required elements of the crime of racketeering," the jury returned a verdict of not guilty to racketeering. The presiding juror marked the verdict form "Not Guilty" with respect to racketeering under the investment theory and "Not Guilty" with respect to racketeering under the participation theory. The presiding juror then wrote at the bottom of the verdict form, "Except as to the seven predicate acts upon which we could not reach unanimous agreement." If the jury was hung on the charge of racketeering, there is no logical reason to believe the presiding juror would have twice marked "Not Guilty" with respect to that charge. He had seven times written "NO AGMT" next to the predicate acts upon which the jury could not agree. Because the jury found Hoyle not guilty of the only crimes with which he was charged, that should have ended this case. It did not, however.

The district court declared a mistrial as to the racketeering charge. Even though the jury had found Hoyle not guilty of racketeering, the district court ordered a new trial on that charge, but limited the State to alleging the seven predicate acts upon which the jury could not unanimously agree. The district court's action was clear error, even if the verdict could be construed as being ambiguous. One interpretation of the verdict is that the jury found Hoyle not guilty of racketeer-

ing, but simply could not agree upon all of the predicate acts charged. The presiding juror wrote the notation "except as to the seven predicate acts upon which we could not reach unanimous agreement" simply because the jury was not sure of the significance of the lack of unanimous agreement on all predicate acts. Another possible interpretation is that the notation somehow qualified the verdict of not guilty of racketeering. The jury was not asked to clarify the meaning of the notation. It is sufficient, however, that the verdict could have been based upon a finding that the State had failed to prove one essential element of racketeering (such as a pattern of racketeering activity). In that circumstance, the jury would be required to return a not guilty verdict to racketeering even if it could not unanimously agree upon all of the alleged predicate acts. Therefore, the verdict must be construed as a not guilty verdict on the racketeering charge. As this Court stated in *State v. Lewis,* 96 Idaho 743, 750, 536 P.2d 738, 745 (1975), when addressing whether the erroneous dismissal of a rape charge by the trial court prevented a retrial of that charge, "It is unclear upon what basis the rape charges were dismissed, whether they were dismissed upon an erroneous evaluation of the evidence or upon an erroneous interpretation of the law, but because the dismissals might have been based upon a factual determination favorable to the defendants they cannot be retried upon the rape charges." Likewise, in *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), the federal district court, sitting as the trier of fact, dismissed an indictment and discharged the defendant, but it was unclear whether the court did so based upon the government's failure of proof or upon the resolution of a legal question in favor of the defendant. The United States Supreme Court held that the government could not appeal the dismissal because where the dismissal could have been based upon the resolution of factual issues against the government, the Double Jeopardy Clause barred further proceedings.

The racketeering charge against Hoyle was not retried, however. The State obtained a new indictment against him charg-

ing as individual felonies five of the seven predicate acts upon which the jury could not reach an agreement. After the State informed the district court that it intended to proceed with the new indictment and would not retry the racketeering charge in this case, the district court dismissed this case.

The issue is whether the State can pursue a second prosecution for lesser included offenses (predicate acts) that the State alleged were a means by which Hoyle committed racketeering but did not separately charge as criminal offenses in the first prosecution. The Double Jeopardy Clause protects against three abuses of prosecutorial power: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *State v. Talavera,* 127 Idaho 700, 905 P.2d 633 (1995). This case presents an instance of the first abuse—a second prosecution for the same offense after acquittal.

The double jeopardy clause in the Idaho Constitution does not provide greater protection against double jeopardy than its federal counterpart. *Berglund v. Potlatch Corp.,* 129 Idaho 752, 932 P.2d 875 (1996); *State v. Reichenberg,* 128 Idaho 452, 915 P.2d 14 (1996). To determine whether the second prosecution is for the same offense, the United States Supreme Court applies what has become known as the Blockburger test. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). That test, from *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), is:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .

"This test emphasizes the elements of the two crimes." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977). A greater offense and a lesser included offense are, by definition, the "same" for purposes of double jeopardy. "As is in-variably true of a greater and lesser included offense, the lesser offense . . . requires no proof beyond that which is required for conviction of the greater. . . . The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Id.* at 168, 97 S.Ct. at 2226–27, 53 L.Ed.2d at 195–96. The Double Jeopardy Clause forbids successive prosecution for a greater offense and a lesser included offense, regardless of the sequence of the prosecutions. "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Id.* at 169, 97 S.Ct. at 2227, 53 L.Ed.2d at 196. Under the Blockburger test, the five felonies with which Hoyle is charged in the new case are the same offense for which he was acquitted.

The predicate acts upon which the jury could not reach an agreement alleged commission of the crimes of grand theft and insurance fraud. The statutory definition of racketeering requires the commission of acts that are chargeable under any of certain criminal code sections, including grand theft and insurance fraud. Idaho Code § 18-7803(2) & (10). Applying the Blockburger test, each of the alleged predicate acts is the same for double jeopardy purposes as the racketeering charge because the predicate acts do not require proof of any fact not necessary to the racketeering charge. As the United States Supreme Court recognized with respect to predicate offenses required for a conviction under a federal CCE statute, "[A]pplying the test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), each of the predicate offenses is the 'same' for double jeopardy purposes as the CCE offense because the predicate offense does not require proof of any fact not necessary to the CCE offense." *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985).

The State argues that the United States Supreme Court has held that the Double Jeopardy Clause does not apply to CCE offenses, such as racketeering. That argument is incorrect. In *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419

(1996), the Court held that a continuing criminal enterprise in violation of 21 U.S.C. § 848 and a conspiracy under 21 U.S.C. § 846 based on the same agreements were the same offense under the Blockburger test, that the conspiracy charge was a lesser included offense of the CCE charge, and that the defendant could therefore not be punished for both offenses. In *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), however, the United States Supreme Court made an exception for CCE offenses under the Double Jeopardy Clause.

In *Garrett,* the defendant pled guilty to one count of importing marijuana for his role in the off-loading and landing of approximately 12,000 pounds of marijuana from a "mother ship" at Neah Bay, Washington. He was sentenced to five years' imprisonment and a $15,000 fine. Approximately two months after his guilty plea, he was charged in Florida with engaging in a CCE. The jury convicted him on the CCE charge, and the evidence offered by the government during his trial to show the required three predicate offenses included evidence regarding the charge to which he had pled guilty in Washington. He appealed, alleging that the CCE prosecution in Florida violated his rights under the Double Jeopardy Clause because of his earlier conviction for the Washington offense. The Supreme Court rejected his argument, based upon *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), in which the Court rejected a claim of double jeopardy where the defendant had been prosecuted for assault and battery and, when the victim later died, was then prosecuted for homicide. The Court in *Garrett* reasoned, "In the present case, as in *Diaz,* the continuing criminal enterprise charged against Garrett in Florida had not been completed at the time that he was indicted in Washington. The latter event took place in March 1981, whereas the continuing criminal enterprise charged in the Florida indictment and found by the trial jury extended from January 1976 to July 1981." 471 U.S. at 791, 105 S.Ct. at 2418, 85 L.Ed.2d at 779. The Court also noted, "Whenever it was during the 5 1/2–year period alleged in the indictment that Garrett committed the first of the

three predicate offenses required to form the basis for a CCE prosecution, it could not then have been said with any certainty that he would necessarily go ahead and commit the other violations required to render him liable on a CCE charge." 471 U.S. at 788–89, 105 S.Ct. at 2416, 85 L.Ed.2d at 778. The Court concluded, "We think this evidence not only permits but requires the conclusion that the CCE charged in Florida, alleged to have begun in January 1976, and continued up to mid-July 1981, was under *Diaz* a different offense from that charged in the Washington indictment." 471 U.S. at 792, 105 S.Ct. at 2418, 85 L.Ed.2d at 780.

The rationale in *Garrett* does not apply, however, when the greater offense is prosecuted first and the alleged predicate acts are prosecuted later. All of the alleged predicate acts had occurred and were known to the State when it initiated the racketeering prosecution. They were all alleged as the means by which Hoyle committed the crime of racketeering. Thus, they were not events that occurred after the continuing criminal enterprise had ended. The State could have charged them as separate offenses, or it could have requested that the jury consider them as included offenses if it found Hoyle not guilty of racketeering. Instead, the State made the tactical decision to charge only the greater offense, possibly in the belief that the jury may be more likely to convict of racketeering if they were not given the choice of any lesser included offenses. When that strategy failed, the State now wants to prosecute Hoyle for what are lesser included offenses. Particularly apt to this situation are the words of the United States Supreme Court in *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957):

The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possi-

bility that even though innocent he may be found guilty.

The continued prosecution of Hoyle would violate the Double Jeopardy Clauses of the United States and Idaho Constitutions.

Justice BURDICK concurs.

### ON PETITION FOR REHEARING

A Petition for Rehearing of this opinion was filed on August 9, 2004. After due consideration, the Petition for Rehearing is DENIED.

Justice EISMANN dissenting from the denial of the petition for rehearing.

The crux of this case is the proper construction of the jury's verdict. If the jury verdict is a "not guilty" verdict on racketeering, then Hoyle cannot be retried. Although the jury marked "not guilty" to the racketeering charge, it added, "Except as to the seven predicate acts upon which we could not reach unanimous agreement." The issue is whether such notation transformed a "not guilty" verdict into a hung jury.

The applicable standard under both our State and Federal Constitutions for construing the verdict has been well established for decades. If the verdict might have been based upon a factual determination favorable to Hoyle, it is a "not guilty" verdict. *State v. Lewis*, 96 Idaho 743, 536 P.2d 743 (1975); *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975).

The district court construed the verdict as stating that the jury was hung on the racketeering charge. When doing so, it neither mentioned nor alluded to the applicable constitutional standard for construing the verdict. The majority here has made the conclusory statement, unsupported by reasoning or authority, that the jury did not return a unanimous verdict on the racketeering charge. Like the district court, the majority has neither mentioned nor applied the appli-cable constitutional standard for construing the verdict. Although the district court may have been unaware of that standard, the majority has no such excuse. It has simply chosen to ignore it.

Application of the constitutional standard for construing the jury verdict in this case would require that it be construed as a not guilty verdict, thereby changing the outcome of Hoyle's appeal.[1] Hoyle, like all other criminal defendants, is entitled to the protection of the safeguards engrafted into our State and Federal Constitutions. Indeed, the majority offers no explanation for its refusal to apply the applicable constitutional standard in this case. If constitutional protections can simply be ignored in particular cases, then we have abandoned the rule of law upon which our nation was founded.

Justice BURDICK concurs in the dissent.

---

1. In order for Hoyle to be guilty of racketeering, the State had to prove all of the elements of the crime, including that he engaged in a "pattern of racketeering activity." There was evidence that during the five-year period covered by the indictment, his insurance business had approximately 1.25 million transactions with gross receipts of about $60 million. The jury could have concluded that although it could not agree with respect to the seven predicate acts, it did agree that the State had failed to prove that such acts, even if true, were part of a pattern of racketeering activity.